UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT DALE HARRIS,

         Plaintiff,

v.                                    Case No: 2:18-cv-17-FtM-29MRM

KEVIN RAMBOSK, in his
official capacity as Sheriff
of Collier County, Florida,
KASEY    P.    WINGO,
individually, MICHAEL D.
CHAPMAN, individually, BRIAN
R. WIEDEL, individually,
SCOTT PEPIN, individually,
and    ROSS    ANTHONY,
individually,

         Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant
Scott Pepin's Motion to Dismiss Amended Complaint (Doc. #62) filed
on June 8, 2018. Plaintiff filed a Response in Opposition (Doc.
#67) on June 21, 2018. For the reasons set forth below, the motion
is denied.

**I.**

This case arises out of an alleged conspiracy by law
enforcement officials of the Collier County Sheriff's Office (the
CCSO) to harass plaintiff Robert Dale Harris (Plaintiff).

According to the Amended Complaint[1] (Doc. #51): On March 9, 2014, between the hours of 3:30 A.M. and 4:30 A.M., Plaintiff was a customer at a McDonald's located at 8875 Davis Boulevard in Naples, Florida, and was seated at an outside table. (Id. ¶¶ 17-18.) Around that time, Deputy Michael D. Chapman (Defendant Chapman) arrived at the McDonald's to assist a McDonald's customer who had locked his keys inside of his vehicle. (Id. ¶ 19.) After assisting that customer with his vehicle, Defendant Chapman – who had encountered Plaintiff in the past – recognized Plaintiff and threatened to trespass him from the McDonald's "and any other business establishment in Naples, whenever he would see him." (Id. ¶¶ 20-21.)

Immediately after the encounter with Defendant Chapman, Plaintiff called the CCSO to report Defendant Chapman's threat. (Id. ¶ 22.) Sergeant Amengual was dispatched to the McDonald's and took Plaintiff's complaint about Defendant Chapman. (Id.)

Approximately a month later, on April 4, 2014, Plaintiff was repairing his friend Randy Leon Sulwilcowski's (Mr. Sulwilcowski) motorcycle that was warehoused at a storage facility in Naples, Florida. (Id. ¶¶ 26-27.) Plaintiff left the storage facility "throughout the day and evening to purchase motorcycle parts from

---

[1] Because this lawsuit involves multiple defendants who have each separately responded to the Amended Complaint, the Court only recounts the factual allegations relevant to the instant Motion to Dismiss.

Walmart" and to purchase refreshments from the Shell gas station located across the street from the storage facility. (Id. ¶¶ 29-30.) Later that evening, Defendant Chapman parked his patrol vehicle across the street from the storage facility and surveilled the storage facility's front gate which Plaintiff had been "entering and exiting [from] throughout the day . . . ." (Id. ¶ 35.) At approximately 9:30 P.M., Defendant Chapman observed Plaintiff exiting the storage facility and then drove up to the front gate, called Plaintiff by his first name, and asked Plaintiff if he was working at the storage facility. (Id. ¶¶ 38, 39, 40, 45.) Deputy Kasey P. Wingo (Defendant Wingo) arrived at the scene as Defendant Chapman was approaching Plaintiff. (Id. ¶ 40.)

Plaintiff informed Defendant Chapman that he was repairing Mr. Sulwilcowski's motorcycle inside the storage facility. (Id. ¶ 45.) Defendant Chapman asked Plaintiff "if anyone could verify that he was working" on the motorcycle. (Id. ¶ 46.) Plaintiff then called Mr. Sulwilcowski – who was inside the storage facility – and asked him to come outside to speak with Defendants Chapman and Wingo. (Id. ¶ 49.) While Plaintiff was waiting for Mr. Sulwilcowski to come outside, Plaintiff was "straddling the horizontal crossbar of his [bicycle] with both feet touching the ground on each side," without making any attempt to pedal away. (Id. ¶ 51.) As Mr. Sulwilcowski was approaching the front gate, Defendants Chapman and Wingo "seize[d] [Plaintiff] from his bike

and beg[a]n beating him" for no apparent reason. (Id. ¶ 52.) Deputy Scott Pepin (Defendant Pepin) arrived at the scene as the altercation between Plaintiff and Defendants Chapman and Wingo was ensuing. (Id. ¶ 56.) Shortly thereafter, Plaintiff was subdued and handcuffed. (Id. ¶ 57.) While "Plaintiff was handcuffed on the ground" and "going in and out of consciousness," Defendant Pepin struck Plaintiff's shoulder with a baton several times. (Id. ¶ 56.) Plaintiff then heard a deputy "mocking him for making his March 9 complaint about" Defendant Chapman to Sergeant Amengual. (Id. ¶ 57.)

As a result of the April 4, 2014 encounter, Plaintiff was charged with three (3) counts of battery on a police officer; one (1) count of assault on a police officer; one (1) count of resisting a police officer without violence; and one (1) count of loitering and prowling. (Id. ¶¶ 59-61.) On April 17, 2014, the State Attorney's Office filed a "Not Filing Charge" on all six counts. (Id. ¶ 62.)

Approximately two months later, Plaintiff again encountered Defendant Pepin. On June 10, 2014, Plaintiff purchased food from the Dunkin' Donuts located at 8885 Davis Boulevard in Naples, Florida, and "went over to the McDonald's next door to buy coffee and sit outside." (Id. ¶¶ 72-73.) Soon thereafter, Defendants Pepin and Wingo arrived at the Dunkin' Donuts and confronted Plaintiff. (Id. ¶¶ 73-74.) Defendant Pepin then "proceeded to

have an employee of the Dunkin's [sic] Donuts agree to issue a trespass warning to [Plaintiff] even though [Plaintiff] had just purchased two donuts and had left without being asked."  (Id. ¶ 369.)  This law suit followed.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level."  Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

The Amended Complaint asserts claims against Defendant Pepin in his individual capacity for false arrest and excessive force under 42 U.S.C. § 1983 (Count VIII), malicious prosecution under Section 1983 (Count IX), malicious prosecution under Florida law (Count X), assault and battery (Count XI), and violation of Plaintiff's First Amendment rights under Section 1983 (Count XVI). Defendant Pepin now moves to dismiss all Counts asserted against him because (1) Counts VIII, IX, X, and XI are time-barred; and (2) he is entitled to qualified immunity against Count XVI.

As a preliminary matter, the Court notes that because Defendant Pepin was not named as a defendant in the original complaint, but was instead added as a defendant in the Amended

Complaint, the Court conducts its statute of limitations analysis based upon the date the Amended Complaint was filed: May 2, 2018.

**A.   The False Arrest and Excessive Force Claim (Count VIII)**

Count VIII is a claim for false arrest and excessive force under Section 1983.  Although Plaintiff asserts them together in Count VIII, federal claims for false arrest and excessive force are separate causes of action.  The Court thus addresses each claim individually below.

**1.   The False Arrest Claim**

Count VIII asserts a claim against Defendant Pepin for false arrest under Section 1983.  Defendant Pepin argues the false arrest claim should be dismissed as time-barred.  The Court disagrees.

A false arrest is a violation of the Fourth Amendment and is a viable claim under section 1983.  Ortega v. Christian, 85 F.3d 1521, 1525–26 (11th Cir. 1996).  A false arrest cause of action arises when an arrest occurs without a warrant and without probable cause.  Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010).

The statute of limitations for a federal false arrest claim is governed by Florida law, which provides for a four-year limitations period.  Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 872 (11th Cir. 2017); Fla. Stat. § 95.11(3)(o).  This limitations period begins to run when the false imprisonment comes to an end.  White v. Hiers, 652 F. App'x. 784, 786 (11th Cir. 2016)

(citing Wallace v. Kato, 549 U.S. 384, 388 (2001)). "[A] false imprisonment ends once the victim becomes held pursuant to [legal] process . . . [such as when] he is bound over by a magistrate or arraigned on charges." Wallace, 549 U.S. at 389 (emphasis omitted).

Here, Plaintiff appeared before a magistrate in state court for first appearance - and the limitations period on his false arrest claim began to run – on April 6, 2014.[2] Wallace, 549 U.S. at 389. Thus, Plaintiff's false arrest claim appears to be untimely because Plaintiff filed his claim against Defendant Pepin on May 2, 2018 – more than four years after the limitations period began to run. However, for the reasons discussed *infra*, the Court denies Defendant Pepin's motion as to Plaintiff's false arrest claim.

### 2.    The Excessive Force Claim

Count VIII also asserts a claim against Defendant Pepin for excessive force under Section 1983. Defendant Pepin argues the excessive force claim should be dismissed as time-barred. The Court disagrees.

---

[2] The Court takes judicial notice of Plaintiff's first appearance date in the public docket of his criminal case #11-2014-CF-000711-AXXX-XX in the Collier County Clerk of the Circuit Court records. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (noting that "[a] district court may take judicial notice of [public records] without converting a motion to dismiss into a motion for summary judgment" (citation omitted)); see also Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010).

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted). Like false arrest claims, federal excessive force claims are subject to Florida's four-year statute of limitations. Boyd, 856 F.3d at 872; Fla. Stat. § 95.11(3)(o). The limitations period begins to run on an excessive force claim when "the facts which would support [the] cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) (citation and internal quotation omitted). Here, the facts supporting Plaintiff's excessive force cause of action became apparent on April 4, 2014 – the date Defendant Pepin allegedly struck Plaintiff's shoulder with a baton. See Baker v. City of Hollywood, 391 F. App'x 819, 821 (11th Cir. 2010) (noting that the facts giving rise to the plaintiff's excessive force claim became apparent the day "he allegedly was beaten").

The Court finds that Plaintiff's excessive force claim appears to be untimely because Plaintiff filed the Amended Complaint on May 2, 2018 – more than four years after the limitations period began to run. For the reasons discussed *infra*, however, the Court denies Defendant Pepin's motion as to Plaintiff's excessive force claim.

### 3. Whether Equitable Estoppel Applies

Plaintiff argues that even if Count VIII was filed outside of the statute of limitations period, it should not be dismissed as time-barred under the doctrine of equitable estoppel.

The "doctrine of equitable estoppel acts as a bar to a statute of limitations defense." Meyer v. Meyer, 25 So. 3d 39, 42 (Fla. 2d DCA 2009). It is premised upon "principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position . . . ." Major League Baseball v. Morsani, 790 So. 2d 1071, 1076 (Fla. 2001). The doctrine "presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct." Ryan v. Lobo De Gonzalez, 841 So. 2d 510, 518 (Fla. 4th DCA 2003). For a plaintiff to successfully assert an equitable estoppel defense, the defendant's wrongdoing – "such as fraud [or] concealment" – must cause the plaintiff's delay in filing his lawsuit. Fla. Dep't of Health & Rehab. Servs. v. S.A.P, 835 So. 2d 1091, 1097 (Fla. 2002).

Here, Plaintiff asserts that, "[o]n July 10, Defendant Pepin offered contradictory, and in some cases, ambiguous testimony, about his participation in the conspiracy against [] Plaintiff." (Doc. #67, p. 13.) Plaintiff contends that these actions prevented him from timely filing his claims against Defendant Pepin. While it is unclear to the Court exactly how Defendant Pepin's conduct

prevented Plaintiff from timely filing his claims against Defendant Pepin, the Court cannot resolve these factual matters which are beyond the four corners of the Amended Complaint when reviewing the instant motion to dismiss. See Pouyeh v. Bascom Palmer Eye Inst., 613 F. App'x 802, 808 (11th Cir. 2015) (noting that a court "generally may not consider materials outside of the four corners of a complaint without first converting the motion to dismiss into a motion for summary judgment" (citation omitted)).

Because Plaintiff has raised a factual question as to whether Defendant Pepin should be equitably estopped from asserting a statute of limitations defense, the Court cannot determine whether Count VIII is time-barred at this stage of the litigation. See Keira v. U.S. Postal Inspection Serv., 157 F. App'x 135, 136 (11th Cir. 2005) (noting that "a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute" (quotation and citation omitted)). Thus, because dismissal on the basis of the statute of limitations is not "apparent from the face of the complaint," the Court denies Defendant Pepin's motion as to Count VIII. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (quotation and citation omitted).

**B.    The Federal Malicious Prosecution Claim (Count IX)**

Count IX is a malicious prosecution claim under Section 1983. It asserts that Defendant Pepin violated Plaintiff's "Fourth Amendment right to be free from malicious prosecution" when he "seized [Plaintiff] without probable cause." (Doc. #51, ¶ 315.) Defendant Pepin argues Count IX should be dismissed as time-barred. The Court disagrees.

A malicious prosecution claim under Section 1983 "arises where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment . . . ." Jones v. Union City, 450 F. App'x 807, 809 (11th Cir. 2011). Malicious prosecution claims under Section 1983 are governed by Florida's statute of limitations. Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998) (noting that "[f]ederal courts apply their forum state's statute of limitations for [malicious prosecution claims] brought pursuant to 42 U.S.C. § 1983"). Under Florida law, malicious prosecution actions are subject to a four-year statute of limitations period. Fla. Stat. § 95.11(3)(o).

While Florida law governs the statute of limitations period for Section 1983 malicious prosecution claims, federal law dictates when the limitation period begins to run. Uboh, 141 F.3d at 1002. Under federal law, the limitations period begins to run on a malicious prosecution claim when the cause of action accrues.

Id. A federal malicious prosecution cause of action accrues when "the criminal proceeding that gives rise to the action has terminated in favor of the accused." Id. at 1004. In Uboh, the Eleventh Circuit noted that "courts have found favorable termination to exist by virtue of . . . an entry of a nolle prosequi . . . ." Id. at 1005.

Here, Defendant Pepin argues Count IX is time-barred because Plaintiff's cause of action accrued in April of 2014, thus making Plaintiff's claim filed on May 1, 2018 untimely. The Court finds that Count IX appears to be untimely because the criminal proceedings against Plaintiff terminated in his favor - and the malicious prosecution cause of action accrued - when the State filed its "Not Filing Charge" on April 17, 2014. See Uboh, 141 F.3d at 1005. However, for the reasons discussed supra, the Court cannot determine at this stage of the litigation whether Defendant Pepin is equitably estopped from asserting a statute of limitations defense against Count IX. The Court therefore denies Defendant Pepin's motion as to Count IX.

## C. The Florida Malicious Prosecution Claim (Count X)

Count X is a malicious prosecution claim under Florida law. It asserts that, because of Defendant Pepin's police report on April 4, 2014, Plaintiff was arrested without probable cause and subsequently jailed for fourteen days. Defendant Pepin argues Count X should be dismissed as time-barred. The Court disagrees.

In Florida, malicious prosecution claims are subject to a four-year statute of limitations, and the limitations period begins to run when the cause of action accrues. Fla. Stat. § 95.11(3)(o); Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007). A malicious prosecution cause of action accrues "upon termination of the prosecution favorably to the plaintiff." Olson, 961 So. 2d at 359. A favorable termination occurs "when there is a good faith nolle prosequi or declination to prosecute." Gatto v. Publix Supermarket, Inc., 387 So. 2d 377, 381 (Fla. 3d DCA 1980).

Here, Plaintiff's malicious prosecution cause of action accrued on April 17, 2014, when the State declined to prosecute Plaintiff by filing its "Not Filing Charge." Id. Because Plaintiff filed his Amended Complaint on May 1, 2018 – more than four years after his cause of action accrued – Count X appears to be time-barred. Fla. Stat. § 95.11(3)(o). However, for the reasons discussed *supra*, the Court cannot determine at this stage of the litigation whether Defendant Pepin is equitably estopped from asserting a statute of limitations defense against Count X. The Court therefore denies Defendant Pepin's motion as to Count X.

**D.    The Assault and Battery Claim (Count XI)**

Count XI asserts a claim for assault and battery under Florida law. In Florida, assault and battery claims are subject to a four-year statute of limitations, and the limitation period begins to

run when the cause of action accrues. Fla. Stat. § 95.11(3)(o);
Scullock v. Gee, 161 So. 3d 421, 422 (Fla. 2d DCA 2014). An
assault and battery claim accrues on the date the alleged assault
and battery occurred. Scullock, 161 So. 3d at 422; Shivers v.
Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 130
(11th Cir. 2008). Accordingly, Plaintiff's claim accrued on April
4, 2014 - the date the alleged assault and battery occurred.
Scullock, 161 So. 3d at 422; Shivers, 262 F. App'x at 130. Count
XI therefore appears to be time-barred because Plaintiff filed the
Amended Complaint more than four years after his assault and
battery cause of action accrued. Fla. Stat. § 95.11(3)(o).
However, for the reasons discussed *supra*, the Court cannot
determine at this stage of the litigation whether Defendant Pepin
is equitably estopped from asserting a statute of limitations
defense against Count XI. Accordingly, the Court denies Defendant
Pepin's motion as to Count XI.

**E.    The First Amendment Claim (Count XVI)**

Count XVI is a First Amendment retaliation claim under Section
1983. It alleges that Defendant Pepin had a Dunkin' Donuts
employee "agree to issue a trespass warning to [Plaintiff] even
though he had just purchased two donuts and had left without being
asked" in retaliation for Plaintiff's complaint to Sergeant
Amengual "about his treatment at the hands of the" CCSO. (Doc.
#51, ¶¶ 363, 369). Defendant Pepin argues Count XVI should be

dismissed because he is entitled to qualified immunity.  The Court disagrees.

Qualified immunity provides "complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quotation omitted).  To be entitled to qualified immunity, "a government official first must prove that he was acting within his discretionary authority" when the allegedly unlawful acts occurred.  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).

Here, the Amended Complaint clearly establishes that Defendant Pepin was acting within his discretionary authority as a CCSO sheriff's deputy.  Thus, the Court next considers whether qualified immunity is appropriate in this case.  Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016).

The Court conducts a two-step analysis to determine whether qualified immunity is appropriate.  Id.  First, the Court determines whether the facts, viewed in the light most favorable to Plaintiff, demonstrate that Defendant Pepin's conduct violated a constitutional right.  Id.  Second, the Court determines whether the constitutional right was clearly established at the time of the alleged violation.  Id.

1. **Whether Plaintiff's Allegations Establish a First Amendment Violation**

The Court begins its analysis with whether Plaintiff's allegations, accepted as true, establish a First Amendment violation. To state a First Amendment retaliation claim, "a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." Bailey, 843 F.3d at 480.

The Court first addresses whether Plaintiff has demonstrated that he engaged in protected speech by filing his complaint with Sergeant Amengual on March 9, 2014. The First Amendment protects the right "to petition the Government for a redress of grievances . . . ." U.S. Const. amend. I. This "Petition Clause protects people's rights to make their wishes and interests known to government representatives in the legislature, judiciary, and executive branches." Biddulph v. Mortham, 89 F.3d 1491, 1496 (11th Cir. 1996) (citations omitted). This right "[c]ertainly . . . extends to all departments of the Government." California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

Here, the Court finds that Plaintiff's complaint to Sergeant Amengual is protected speech under the First Amendment's Petition Clause because he was petitioning the CCSO – a governmental entity – to redress his grievance against Defendant Chapman. See Entler

v. Gregoire, 872 F.3d 1031, 1043 (9th Cir. 2017) (holding that "the filing of a criminal complaint . . . as well as the threat to do so, are protected by the First Amendment" (citation omitted)); Meyer v. Bd. of Cty. Comm'rs of Harper Cty., Okla., 482 F.3d 1232, 1243 (10th Cir. 2007) (holding that "filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition the government for the redress of grievances" (quotation and citation omitted)); United States v. Hylton, 710 F.2d 1106, 1111 (5th Cir. 1983) (holding that "filing a factually accurate, nonfraudulent criminal complaint . . . with the appropriate local law enforcement officials . . . represent[s] a legitimate and protected exercise of [the] right to petition for the redress of grievances"). The Court next considers whether Plaintiff has plausibly stated that Defendant Pepin's alleged conduct adversely affected Plaintiff's protected speech.

A defendant's conduct "adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bailey, 843 F.3d at 481 (quotation and citation omitted). Whether a defendant's conduct would likely deter a person of ordinary firmness from exercising their First Amendment rights is examined under an objective standard. Bennett v. Hendrix, 423 F.3d 1247, 1251 (11th Cir. 2005).

The Court finds Plaintiff has satisfied this test. Accepting the allegations in the Amended Complaint as true, the Court finds that Defendant Pepin's alleged retaliatory conduct would likely deter a person of ordinary firmness from exercising their right to file a complaint against law enforcement in the future. See id. ("[T]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982))). Thus, the Court next analyzes whether Plaintiff has demonstrated a causal connection between his protected speech and the alleged constitutional violation.

To establish a causal connection between a plaintiff's protected speech and a constitutional violation, the plaintiff "must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (quotation and citation omitted). At the motion to dismiss stage, the subjective motivation requirement is satisfied if the plaintiff identifies a sequence of events from which a retaliatory motive can be inferred. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010).

Here, Defendant Pepin contends that Plaintiff has failed to satisfy the causal connection element because the Amended

Complaint contains no allegations demonstrating that Defendant Pepin "was even aware that [the] complaint [to Sergeant Amengual] had been made." (Doc. #62, p. 17.) The Court disagrees.

The Amended Complaint alleges that (1) on March 9, 2014, Defendant Chapman unlawfully "threatened to trespass [Plaintiff] from . . . any [] business establishment in Naples, whenever he would see him"; (2) later that day, Plaintiff filed a complaint with Sergeant Amengual about Defendant Chapman's unlawful trespass threat; (3) on April 4, 2014, approximately one month after Plaintiff filed the complaint, Defendant Chapman – accompanied by Defendant Pepin - arrested Plaintiff without probable cause, where Defendant Pepin struck Plaintiff with a baton while he was "handcuffed on the ground [and] going in and out of consciousness"; (4) after Defendant Pepin struck Plaintiff with the baton, another deputy "mock[ed] him for making his March 9 complaint" to Sergeant Amengual;[3] and (5) on June 10, 2014, while Plaintiff was outside of Dunkin' Donuts, Defendant Pepin "proceeded to have an employee of the Dunkin's [sic] Donuts agree to issue a trespass warning to [Plaintiff] even though [Plaintiff] had just purchased two donuts and had left without being asked." (Doc. #51, ¶¶ 20, 22, 56, 57, 369.) Accepting Plaintiff's factual allegations as true, the Court

---

[3] The Court notes that, viewing the facts in the light most favorable to Plaintiff, this sequence of events plausibly indicates that Defendant Pepin was aware of Plaintiff's complaint to Sergeant Amengual.

finds that a retaliatory motive for Defendant Pepin's conduct can be inferred from this sequence of events, particularly because another deputy mocked Plaintiff for making his complaint to Sergeant Amengual after Defendant Pepin allegedly struck Plaintiff with a baton as he was handcuffed on the ground. Thus, Plaintiff has plausibly established a causal connection between his protected speech and Defendant Pepin's alleged constitutional violation.

For the foregoing reasons, the Court finds that Plaintiff has sufficiently alleged a First Amendment violation. Accordingly, in determining whether Defendant Pepin is entitled to qualified immunity, the Court next considers whether Plaintiff's First Amendment right was clearly established at the time of the alleged violation.

## 2. Whether Plaintiff's First Amendment Right Was Clearly Established

Defendant Pepin argues that even if he violated Plaintiff's First Amendment right on June 10, 2014, Plaintiff's First Amendment right in that context was not clearly established. Specifically, Defendant Pepin contends that the state of the law did not give him fair warning that "being present at the Dunkin' Donuts and briefly speaking to the cashier while another officer issued Plaintiff a trespass warning would be clearly unlawful." (Doc. #62, p. 19.) However, because the Court must accept Plaintiff's

factual assertions as true at the motion to dismiss stage, the Court conducts the proceeding analysis based upon Plaintiff's factual allegations in the Amended Complaint: Plaintiff contends that Defendant Pepin had a Dunkin' Donuts employee "agree to issue a trespass warning to [Plaintiff] even though [Plaintiff] had just purchased two donuts and had left without being asked," in retaliation for his complaint to Sergeant Amengual. (Doc. #51, ¶ 369.)

A constitutional right is clearly established if "a reasonable official would understand that his conduct violates that right." Bailey, 843 F.3d at 483 (citation omitted). This inquiry centers on "[w]hether the official had 'fair warning' and notice that his conduct violated the constitutional right in question . . . ." Id. For this analysis, the Court only looks to cases decided by "the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court." Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012).

Whether the state of the law provided a defendant with fair warning that his conduct violated a constitutional right can be demonstrated in one of three ways. Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012). First, a plaintiff may identify "case law with indistinguishable facts clearly establishing the constitutional right" at issue. Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).

Second, a plaintiff may rely on "a broad statement of principle within the Constitution, statute, or case law that clearly establishes [the] constitutional right . . . ." Id. at 1292. Third, a plaintiff may demonstrate that the defendant's "conduct [was] so egregious that a constitutional right was clearly violated, even in the total absence of case law." Id.

Here, because the Court is aware of no United States Supreme Court, Eleventh Circuit, or Florida Supreme Court case law with indistinguishable facts from this case, the Court proceeds under the second method discussed above. This analysis requires the Court to consider whether "some broad statements of principle in case law . . . can clearly establish law applicable in" this case. Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). The principle must be established with "obvious clarity" so that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id.

The Court finds that broad principles established by the Eleventh Circuit provided Defendant Pepin with fair warning that having the Dunkin' Donuts employee "agree to issue a trespass warning to" Plaintiff in retaliation for his complaint to Sergeant Amengual was unlawful (Doc. #51, ¶ 369). See Bailey, 843 F.3d at 483-85; Bennett, 423 F.3d at 1255-56. For instance, in Bailey, the Eleventh Circuit held "it is certainly obvious" that a law

enforcement officer "clearly violated" the First Amendment when he issued a be-on-the-lookout advisory for the plaintiff in retaliation for the plaintiff's complaints "about alleged civil-rights abuses . . . ." Bailey, 843 F.3d at 485. Similarly, in Bennett, the Eleventh Circuit held that sheriff's deputies had fair warning that "retaliating against the plaintiffs for their support of" a referendum opposed by the sheriff "would violate the plaintiffs' constitutional rights and . . . would lead to liability under § 1983." Bennett, 423 F.3d at 1256. The court reasoned that "it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights . . . ." Id. (citation omitted). The Court finds that the reasoning of these cases provided Defendant Pepin with fair warning that his alleged conduct was unlawful.

In light of the foregoing, the Court finds that the Amended Complaint sufficiently alleges that Defendant Pepin violated Plaintiff's clearly established constitutional right. Thus, at this stage of the litigation, the Court finds that Defendant Pepin is not entitled to qualified immunity as to Count XVI.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss Amended Complaint (Doc. #62) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___18th___ day of October, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record