# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

ROBERT DALE HARRIS,

        Plaintiff,

vs.                              Case No.  **2:18-CV-00017-JES-MRM**

KEVIN RAMBOSK, in his Official Capacity as Sheriff of Collier County, Florida, KASEY P. WINGO, individually, MICHAEL D. CHAPMAN, individually, and SCOTT PEPIN, individually,

        Defendants.

_____/

### PLAINTIFF'S MOTION IN LIMINE AND MEMORANDUM IN SUPPORT TO EXCLUDE EVIDENCE RELATED TO THE PLAINITFF'S, ROBERT DALE HARRIS'S, ARREST and JUVENILE RECORD

The Plaintiff, Robert Dale Harris, by and through his undersigned counsel, file this Motion in Limine to Exclude Certain Testimony and in support thereof, and incorporates by reference, the Plaintiff's Motion in Limine to Exclude his brother as a witness and evidence pertaining to him, which will be filed as a separate motion, and states as follows:

### MEMORANDUM OF LAW

**I.    Legal Standard**

A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial. In re Seroquel Products Liability Litigation, 2009 WL 26099 at *1 (M.D. Fla. 2009). A motion in limine serves the purpose of providing the court with "notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." Id.

In considering a motion in limine, this Court has broad discretion to determine the admissibility of evidence. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998), citing United States v. Ross, 131 F.3d 970, 987 (11th Cir. 1997). An appellate court will find an abuse of discretion only when the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment. Tran v. Toyota Motor Corp., 420 F.3d 1310 (11th Cir. 2005).

Federal Rules of Evidence 401 and 402 govern relevance and the admissibility of evidence. "Relevant evidence" is "evidence having a tendency to make the existence of any fact that [*4] is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and "[e]vidence which is not relevant is not admissible." Lane v. McKeithen, 423 Fed. Appx. 903, 905 (11th Cir. 2011)(citing Fed. R. Evid. 401, 402). However, even if evidence is deemed to be relevant, the court may exclude relevant evidence pursuant to Federal Rule of Evidence 403, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403, In re Seroquel Products Liability Litigation, 2009 WL 26099 at *2.

Federal Rules of Evidence 404 governs character evidence. Under 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

Fla. Stat. § 985.045(4) determines whether juvenile records are admissible as evidence.

The Plaintiff believes that the matters set forth herein would be inadmissible for any purpose on proper and timely objection because they have no bearing on the issues in this case.

Permitting interrogation of witnesses, comments to jurors or prospective jurors, or offers of evidence concerning these matters would prejudice the jury, and sustaining objections to such questions, comments, or offers would not cure such prejudice, but rather reinforce the impact of the prejudicial matters to the jury.

    **II.    Motion in Limine to Exclude Any Argument or Testimony Pertaining to the Plaintiff's Juvenile and Adult Arrests**

It is the Plaintiff's belief that the defense intends to enter into evidence or argument the Plaintiff's juvenile and adult arrest record to demonstrate character, which is contrary to the Federal Rules of Evidence under Rule 404.

    **A. Fla. Stat. § 985.045(4) Determines Whether Records of Juvenile Proceedings are Admissible.**

The Plaintiff's juvenile record is sealed under Florida law and is not relevant to this case. Fla. Stat. § 985.045(4), Federal Rules of Civil Procedure, Rule 403. "A court record of proceedings under this chapter is not admissible in evidence in any other civil or criminal proceeding, with limited exceptions." Fla. Stat. § 985.045(4). These exceptions are:

    (a)    Orders transferring a child for trial as an adult are admissible;
    (b)    Orders binding an adult over for trial on a criminal charge;
    (c)    Records of proceedings under this chapter forming a part of the record on appeal; and
    (d)    Records are admissible in evidence in any case in which a person is being tried upon a charge of having committed perjury, to the extent such records are necessary to prove the charge.

None of the exceptions under Florida Statute for disclosing the Plaintiff's juvenile record applies here. Under the Federal Rules of Civil Procedure, Rule 403, the Plaintiff's juvenile record is irrelevant and immaterial relative to his claims in this case, and its probative value is substantially outweighed by the risk of undue prejudice to him as the Plaintiff. *See* e.g., <u>Harless v. Boyle-Midway Div. v. American Home Products</u>, 594 F.2d 1051, 1057-8 (5th Cir. 1979).

Moreover, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character trait. Fed. R. Civ. Pro. 404(a)(1). The Plaintiff was 40 years old at the time of his iStorage arrest in 2014, making his juvenile record 22 years old, and his juvenile record offers no probative value as to this arrest or the subsequent interactions between him and the Defendants. The Defendants have failed to establish that the unsealing of the Plaintiff's juvenile record either meets one of the exceptions under statute or relates to the matters as pled in this case.

The Plaintiff's juvenile record was part of the Defense Expert's Lori Butts examination and, therefore, she should be prohibited from testifying about the Plaintiff's juvenile record, referencing or alluding to his juvenile record, and the part of her report referencing his juvenile record should be redacted. Likewise, Defense Expert Richard Hough should also be prohibited from referencing or alluding to the Plaintiff's juvenile record or any report submitted by Mr. Hough to the jury should redact such information. Likewise, the Defendants should be prohibited from referencing, alluding to, inquiring, or examining witnesses as to the existence or merits of the Plaintiff's juvenile record. If the Defendants examine or attempt to argue the existence of the Plaintiff's juvenile record and, even if the Court should sustain Plaintiff's Counsel's objections, the issue of the juvenile record will be left lingering in the minds of the jurors, which could adversely affect their opinion of the Plaintiff's credibility and the merits of his claims.

**A. The Plaintiff's Adult Arrest Record is Not Relevant or Material to the Claims in this Case and Its Probative Value is Outweighed by Prejudice to the Plaintiff.**

The Plaintiff does not have an adult criminal conviction record, which is expressly void of any crimes related to drugs or drug dealing. (Woods Aff. ¶¶ 4-5). Furthermore, he has had

no contact with law enforcement for investigation of a crime since leaving Florida in 2016, including traffic violations. (Id.). Since the inception of this case, the Defendants have attempted to link the Plaintiff with his brother Bo Harris and others who they "suspect" of engaging in drugs or drug dealing, without any evidence to demonstration that the Plaintiff was a participant, either passively or actively, or that illicit drug activity was occurring. The Defendants' suspicions have never materialized into an actual arrest or evidence that the Plaintiff or his brother were using his grandmother's home as a drug house or a place to store drugs.

Moreover, former Defendant Wiedel was very clear in deposition that Bo's October 2016 traffic stop was for a traffic infraction and that there was no indication of any type of narcotics or a smell of narcotics in the car. (Wiedel Dep. 69:7-19; 71:6-24). Just as importantly, Wiedel also testified that he did not "have any Intel of Bo Harris" including that he or an associate were running drugs prior to the October 2016 traffic stop. (Wiedel Dep. 71:22-24). Therefore, any argument that the Sheriff's Department was keeping the Plaintiff's home under surveillance for drug activity, specifically prior to October 2016, is without merit.

In October 2016, when former Defendant Wiedel performed the traffic stop the tag came back legally registered to the GMC, which was the Plaintiff's car. (Wiedel Dep. 46:9-21). The Plaintiff testified in deposition that he, *not* Bo, had removed the tag from his GMC and attached it to his Ford about *six days* before his December 16, 2016 arrest, while waiting for his paycheck so he could pay the transfer fee. (Harris Dep. 478:2-14, 481:9-12).

Wingo testified in his deposition, however, that he had received "intel" during Bo's October 2016 traffic stop (where Wiedel was present) that Bo had switched the tag. (Wingo Dep. 176:11-15). Wingo also testified that he had been checking on the switched tag for

"[m]aybe one month" before the Plaintiff's arrest. (Id.) Wiedel, however, who had actually preformed the stop made no mention of Wingo's alleged "intel" about Bo being the one who had switched the tag two months prior to the Plaintiff's arrest.

In fact, Wiedel testified in deposition that he only ran the tag a day or two before the Plaintiff's December 2016 arrest when he first noticed that the tag was on the Ford and not the GMC. (Wiedel Dep. 51:10-22; 52:4-24). Wiedel's testimony that he noticed that the tag was switched only a few days before the Plaintiff's December 2016 arrest, supports the Plaintiff's testimony that the tag had only been on the Ford for a short period of time. Moreover, the Plaintiff testified that he had switched the tags from the GMC to the Ford, which he both owned, while he waited to be paid so that he could afford the registration. (Harris Dep. 478:2-14, 481:9-12). Wingo's uncorroborated and contradicted testimony is a desperate attempt to weaken the Plaintiff's ability to maintain a claim against him and the Collier County Sheriff's Department for the April 2014 arrest.

The sad irony here is that on the day of the Plaintiff's December 16, 2016 arrest, he was delivering donuts and bagels on behalf of his employer – Dunkin Donuts – the same employer that Defendant Pepin had unlawfully trespassed him from in 2014. (Harris Dep. 486:6-25; 487:1-25).

## Conclusion

**WHEREFORE**, the Plaintiff Robert Dale Harris, asks this Court to prohibit the interrogation of witnesses, comments to the jurors or prospective jurors, or offers of evidence to show at trial the Plaintiff's juvenile record. The Plaintiff's juvenile record is irrelevant to this case and fails to meet the exceptions as delineated by Florida Statute and under the Federal Rules

of Evidence, Rule 404 to prove that the Plaintiff acted in accordance with the character trait at the time of the allegations contained in in this case.

Furthermore, any reference to the Plaintiff that he was arrested prior, excluding the claims here, or that he and his brother were "suspected" of engaging in illegal drug activities lacks probative value and has the potential to create an unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time against the Plaintiff.

### RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Plaintiff ROBERT DALE HARRIS, certifies that before filing this motion, she conferred with counsel for Defendants SHERIFF KEVIN RAMBOSK, KASEY WINGO, MICHAEL CHAPMAN, and SCOTT PEPIN. All counsel for Defendants **OPPOSE** this motion.

### CERTIFICATE OF SERVICE

I hereby Certify that I have electronically filed a copy of the forgoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: **Robert C. Shearman, Esq.**, Henderson, Franklin Starnes & Holt, P.A., Attorneys for Defendant Wingo, 1715 Monroe St., Ft. Myers, Florida 33902-0280, robert.shearman@henlaw.com; **Bruce R. Bogan, Esq.**, Hilyard, Bogan & Palmer, P.A., Attorneys for Defendant Chapman, 105 E. Robinson St, Suite 201, Orlando, Florida 32802, bbogan@hilyardlawfirm.com; **Summer M. Barranco, Esq.**, Purdy, Jolly, Giuffreda & Barranco, P.A., Attorneys for Defendant Sheriff Rambosk, 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, Florida 33304, summer@purdyllaw.com; and **Thomas W. Poulton, Esq.**, DeBevoise & Poulton, P.A., Attorneys for Defendant Wiedel, 1035 S. Semoran Blvd., Suite 1010, Winter Park, Florida 32792-5512, poulton@debevoisepoulton.com this 26th day of August, 2019.

Attorney for the Plaintiff, ROBERT DALE HARRIS

By    s/Dawn L. Drellos-Thompson
DAWN L. DRELLOS-THOMPSON, ESQ.
Florida Bar No. 1026247
Compass Law Firm, P.A.
27499 Riverview Center Blvd., Suite 128
Bonita Springs, Florida 34134
Telephone: 239-444-1727
Email: dawn@compass.legal