UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT DALE HARRIS,

       Plaintiff,

v.                    Case No: 2:18-cv-17-FtM-29MRM

KEVIN RAMBOSK, in his
official capacity as Sheriff
of Collier County, Florida,
KASEY P. WINGO,
individually, MICHAEL D.
CHAPMAN, individually, SCOTT
PEPIN, individually, and
ROSS ANTHONY, individually,

       Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on defendant Scott Pepin's Motion for Summary Judgment (Doc. #113) filed on June 10, 2019. Plaintiff filed a Response (Doc. #128) on June 24, 2019. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

    Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to

find for the nonmoving party." <u>Baby Buddies, Inc. v. Toys "R" Us,</u> <u>Inc.</u>, 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Anderson</u>, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Tana</u> <u>v. Dantanna's</u>, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819 (11th Cir. 1999)(quoting <u>Warrior Tombigbee Transp.</u> <u>Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant

summary judgment." <u>Allen v. Bd. of Pub. Educ.</u>, 495 F.3d 1306, 1315 (11th Cir. 2007).

Qualified immunity provides "complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1363 (11th Cir. 2012) (quotation omitted). A defendant claiming qualified immunity must show that he acted "within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting <u>Courson v. McMillian</u>, 939 F.2d 1479, 1487 (11th Cir. 1991)). If that showing is made, then the plaintiff must establish "(1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct." <u>Singletary v. Vargas</u>, 804 F.3d 1174, 1180 (11th Cir. 2015)(citation omitted). It is undisputed that Deputy Pepin was acting within his discretionary authority as a law enforcement officer at all relevant times.

**II.**

On May 2, 2018, Plaintiff filed an Amended Complaint (Doc. #51) against defendant Scott Pepin[1] (Deputy Pepin), a Collier County Sheriff's Office (CCSO) deputy, and others. The Amended Complaint asserts claims against Deputy Pepin for false arrest and excessive force under 42 U.S.C. § 1983 (Count VIII); malicious prosecution under § 1983 (Count IX); malicious prosecution under Florida law (Count X); assault and battery under Florida law (Count XI); and First Amendment retaliation under § 1983 (Count XVI).

This case – as it relates to Deputy Pepin – centers on three events occurring on March 9, 2014, April 4, 2014, and June 10, 2014. The undisputed facts are as follows:

**A.    The March 9, 2014 Complaint to the CCSO**

On March 9, 2014, Plaintiff called the CCSO to complain about Deputy Michael D. Chapman (Deputy Chapman). (Doc. #113, p. 3; Doc. #128, p. 3.) Plaintiff complained that while he was sitting outside of a McDonald's in Naples, Florida, Deputy Chapman threatened to trespass Plaintiff from "all local businesses." (Id.) Sergeant Bartolome Amengual (Sergeant Amengual) and Deputy Kasey P. Wingo (Deputy Wingo) arrived at the scene and took

---

[1] Deputy Pepin was not named as a defendant in the original Complaint (Doc. #1).

Plaintiff's complaint. (Id.) Deputy Pepin was not present for Plaintiff's March 9, 2014 complaint to the CCSO. (Id.)

## B. The April 4, 2014 Arrest

On April 4, 2014, Plaintiff was repairing his friend Randy Leon Sulwilcowski's motorcycle that was warehoused at a storage facility in Naples, Florida. (Doc. #113, pp. 3-4; Doc. #128, p. 3.) Deputies Chapman and Wingo encountered Plaintiff as he was exiting the storage facility. (Id.) Deputies Wingo and Chapman ultimately arrested Plaintiff and engaged in a physical altercation with Plaintiff while placing him under arrest. (Doc. #113, pp. 5-7; Doc. #128, pp. 3-4.) Deputy Pepin arrived at the scene to assist Deputies Wingo and Chapman with Plaintiff's arrest. (Doc. #113, p. 6; Doc. #128, pp. 3-4.) Deputy Pepin struck Plaintiff's back several times with a baton and deployed his Taser into Plaintiff's back. (Doc. #113, p. 6; Doc. #128, p. 4.)

Plaintiff was ultimately charged with three (3) counts of battery on a police officer; one (1) count of assault on a police officer; one (1) count of resisting an officer without violence; and one (1) count of loitering and prowling. (Doc. #51, ¶¶ 59-62; Doc. #128, p. 4.) On April 17, 2014, the State Attorney's Office filed a "Not Filing Charge" on all six counts. (Doc. #113, p. 8; Doc. #128, p. 4.)

C. **The June 10, 2014 Trespass Warning**

On June 10, 2014, Plaintiff purchased donuts from Dunkin Donuts in Naples, Florida; Plaintiff then took the donuts to the neighboring McDonald's, purchased a coffee from the McDonald's, and used his computer at an outside table. (Doc. #113, p. 9; Doc. #128, p. 5.) Deputy Pepin and Deputy Sean Ellis (Deputy Ellis) arrived at the scene, and Deputy Ellis ultimately issued Plaintiff a trespass warning for the Dunkin' Donuts. (Doc. #113, p. 9; Doc. #128, p. 6.) Under "Reason for Contact/Other Comments" the trespass warning states, "Trespass. Robert Harris stated that he does not consent to this." (Doc. #116-1, p. 23.)

Deputy Pepin testified at deposition that he and Deputy Ellis were dispatched to the McDonald's because the McDonald's management wanted Plaintiff to leave the premises. (Doc. #116, pp. 75-76.) Deputy Pepin further testified that when he arrived at the McDonald's, Sara Wolin, a Dunkin' Donuts employee, approached him and asked that Deputy Pepin and Deputy Ellis[2] trespass Plaintiff from the Dunkin' Donuts because he was "'harassing customers and stealing stuff.'" (Doc. #116, p. 76.) Sarah Wolin testified at deposition that she "had seen the cop next to [Dunkin' Donuts] at the McDonald's and [] called him over

_____

[2] It is unclear to the Court which other deputies were present at the scene.

and [] asked him to have [Plaintiff] trespassed." (Doc. #117, p. 18.) Sarah Wolin testified that, earlier on June 10, 2014, Plaintiff "got upset because [she] told him that [she] couldn't give him [free food]" and that Plaintiff "got very mad and stormed out and then came back in and then stormed back out again." (Id. pp. 17-18.) Sarah Wolin further testified that she requested that Plaintiff be trespassed from Dunkin' Donuts because he had "been coming to [her] place of employment for several months, getting free food, making [her] uncomfortable, and [she] did not want [Plaintiff] at [her] place of employment anymore." (Id. p. 21.)

## III.

Deputy Pepin now moves for summary judgment. As to Plaintiff's claims for false arrest and excessive force (Count VIII), malicious prosecution (Counts IX, X), and assault and battery (Count XI), Deputy Pepin moves for summary judgment because (1) these Counts are time-barred; and (2) Deputy Pepin is otherwise entitled to judgment on the merits. As to Plaintiff's claim for First Amendment retaliation, Deputy Pepin argues (1) there is no evidence establishing that Deputy Pepin was motivated to issue Plaintiff a trespass warning by Plaintiff's March 9, 2014 complaint about a fellow officer; (2) "there was objective lawful

justification for issuance of the trespass warning"; and (3) he is entitled to qualified immunity.[3]  (Doc. #113, p. 23.)

## A.    Whether the April 4, 2014 Arrest Claims are Time-Barred

As to the April 4, 2014 arrest, Plaintiff asserts claims against Deputy Pepin for false arrest and excessive force (Count VIII), malicious prosecution under § 1983 (Count IX), malicious prosecution under Florida law (Count X), and assault and battery under Florida law (Count XI).  Deputy Pepin argues that these claims are time-barred.

### (1)    The False Arrest Claim (Count VIII)[4]

Count VIII includes a claim for false arrest under § 1983. The statute of limitations for a federal false arrest claim is governed by Florida's four-year statute of limitations.  Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 872 (11th Cir. 2017); Fla. Stat. § 95.11(3)(o).  This limitations period began to run on April 6, 2014 – the date Plaintiff appeared before a magistrate in

---

[3] Plaintiff argues in his Response that Deputy Pepin is not entitled to summary judgment on Plaintiff's § 1983 civil conspiracy claim.  (Doc. #128, pp. 17-18.)  The Amended Complaint, however, does not assert a civil conspiracy claim against Deputy Pepin. Thus, the Court does not discuss this issue below.

[4] Count VIII asserts a claim for both false arrest and excessive force.  Federal claims for false arrest and excessive force are separate causes of action, and the Court will therefore address each claim separately.

state court for first appearance.[5] White v. Hiers, 652 F. App'x. 784, 786 (11th Cir. 2016); Wallace v. Kato, 549 U.S. 384, 388 (2001). Thus, Plaintiff's false arrest claim appears to be untimely because Plaintiff filed the Amended Complaint on May 2, 2018 – more than four years after the limitations period began to run.

### (2) The Excessive Force and Assault and Battery Claims (Counts VIII and XI)

Count VIII also includes an excessive force claim under § 1983, and Count XI asserts a claim for assault and battery under Florida law. These claims are both subject to Florida's four-year statute of limitations. Boyd, 856 F.3d at 872; Scullock v. Gee, 161 So. 3d 421, 422 (Fla. 2d DCA 2014); Fla. Stat. § 95.11(3)(o). The limitations period for these claims began to run on April 4, 2014, when Deputy Pepin allegedly used excessive force and committed the assault and battery. Mullinax v. McElhenney, 817

---

[5] The Court takes judicial notice of Plaintiff's first appearance date in the public docket of his criminal case #11-2014-CF-000711-AXXX-XX in the Collier County Clerk of the Circuit Court records. See Kerruish v. Essex Holdings, Inc., 777 F. App'x 285, 293 (11th Cir. 2019)("Under Federal Rule of Evidence 201, a court 'may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2)).

F.2d 711, 716 (11th Cir. 1987); <u>Scullock</u>, 161 So. 3d at 422.  Thus, Plaintiff's claims for excessive force and assault and battery appear untimely because Plaintiff filed the Amended Complaint on May 2, 2018 – more than four years after the limitations period began to run.

### (3)     The Malicious Prosecution Claims (Counts IX and X)

Count IX asserts a claim for malicious prosecution under § 1983 and Count X asserts a malicious prosecution claim under Florida law.  Both malicious prosecution claims are governed by Florida's four-year statute of limitations.  <u>Uboh v. Reno</u>, 141 F.3d 1000, 1002 (11th Cir. 1998); <u>Olson v. Johnson</u>, 961 So. 2d 356, 359 (Fla. 2d DCA 2007); Fla. Stat. § 95.11(3)(o).  The limitations period on Plaintiff's federal and state malicious prosecution claims began to run when the State filed its "Not Filing Charge" on April 17, 2014.  <u>Uboh</u>, 141 F.3d at 1002; <u>Olson</u>, 961 So. 2d at 359.  The Court thus finds Counts IX and X appear to be untimely because Plaintiff filed the Amended Complaint on May 2, 2018 – more than four years after the limitations period began to run.

### (4)     Whether Equitable Estoppel Applies

Although Counts VIII, IX, X, and XI appear untimely, Plaintiff contends these Counts are not time-barred under the doctrine of equitable estoppel.  The Court finds equitable estoppel inapplicable in this case.

The "doctrine of equitable estoppel acts as a bar to a statute of limitations defense." Meyer v. Meyer, 25 So. 3d 39, 42 (Fla. 2d DCA 2009). It is premised upon "principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position . . . ." Major League Baseball v. Morsani, 790 So. 2d 1071, 1076 (Fla. 2001). The doctrine "presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct." Ryan v. Lobo De Gonzalez, 841 So. 2d 510, 518 (Fla. 4th DCA 2003). For a plaintiff to successfully assert an equitable estoppel defense, the defendant's wrongdoing – "such as fraud [or] concealment" – must cause the plaintiff's delay in filing his lawsuit. Fla. Dep't of Health & Rehab. Servs. v. S.A.P, 835 So. 2d 1091, 1097 (Fla. 2002).

Plaintiff contends equitable estoppel applies because, after being released from jail in January of 2017 for a December 2016 arrest, he "was looking for a place to live, which made it difficult to communicate and review the facts and issues in this case and to determine the true extent of [Deputy] Pepin's role in his case." (Doc. #128, p. 19.) Plaintiff further argues equitable estoppel applies because Deputy Pepin's "willingness to change his sworn PRB testimony at deposition [] is an indication that he was willing to conceal his actions in this case." (Id.)

The Court is unpersuaded that equitable estoppel applies in this case. Plaintiff has failed to establish how his housing situation in 2017 is attributable to Deputy Pepin and resulted in a "delayed filing [] because of [Deputy Pepin's] conduct." Lobo De Gonzalez, 841 So. 2d at 518. Similarly, Plaintiff has failed to establish how Deputy Pepin's "willingness to change his sworn PRB testimony at deposition" (Doc. #128, p. 19) constitutes a "fraud [or] concealment" that delayed Plaintiff in timely filing Counts VIII, IX, X, and XI. S.A.P, 835 So. 2d at 1097. Plaintiff obviously knew of Deputy Pepin's conduct when it occurred since he was the alleged victim. The Court thus finds Plaintiff has not established that equitable estoppel applies in this case.

### (5) The Amended Complaint Relates Back to the Original Complaint

While Counts VIII, IX, X, and XI appear to be untimely as discussed above, and although equitable estoppel does not apply in this case, the Court does not agree with Deputy Pepin that Counts VIII, IX, X, and XI are time-barred. Rather, the Court finds these Counts are timely because they relate back to the timely claims set forth in the January 9, 2018 original Complaint (Doc. #1).

Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading" under three circumstances:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Under Rule 15(c)(1)(B), Plaintiff's claims against Deputy Pepin arise out of the same conduct set forth in the original Complaint (Doc. #1). As in the Amended Complaint, the original Complaint alleges that (1) Deputy Pepin "was one of the responding deputies to [Plaintiff's] April 4, 2014 arrest"; (2) Deputy "Pepin [] use[d] his baton to strike [Plaintiff] on his back several times"; and (3) Deputy "Pepin was also present during the Dunkin' Donuts' trespass." (Doc. #1, ¶¶ 52, 66.) The Court thus finds that Counts VIII, IX, X, and XI in the Amended Complaint relate back to the original Complaint. See Mayle v. Felix, 545 U.S. 644, 659 (2005)("[R]elation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." (citation and quotation omitted)).

Because Counts VIII, IX, X, and XI in the Amended Complaint relate back to the original Complaint, and since the original Complaint was filed within the applicable four-year statute of limitations, the Court finds Counts VIII, IX, X, and XI are timely. See Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1285 (11th Cir. 2000)("If the new claims relate back to the original claims, [courts] must consider the new claims as having been filed at the time of the original claims."). Thus, the Court next considers whether Deputy Pepin is entitled to summary judgment on the merits of these claims.

**B.    Whether Deputy Pepin is Entitled to Summary Judgment on the Merits of Plaintiff's April 4, 2014 Claims**

**(1)   The Excessive Force Claim (Count VIII)**

Count VIII includes an excessive force claim[6] under § 1983. Deputy Pepin moves for summary judgment on Plaintiff's claim for excessive force because (1) Deputy Pepin's use of force was objectively reasonable; and (2) Deputy Pepin is entitled to qualified immunity because it was not clearly established as of April 4, 2014 that Deputy Pepin's use of force constituted excessive force.

---

[6] As discussed earlier, Count VIII asserts claims for both false arrest and excessive force, which are distinct causes of action. The Court will therefore address the false arrest and excessive force claims separately.

A claim that a law enforcement officer used excessive force in the course of an arrest is analyzed under the Fourth Amendment and its objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Wilson v. Northcutt, 987 F.2d 719, 722 (11th Cir. 1993). "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)(citation omitted). In determining whether an officer used excessive force in effectuating an arrest, the Court considers "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989)(citation omitted).

Here, the video footage from Sergeant Amengual's dashcam shows that Deputy Pepin struck Plaintiff's back several times with a baton and deployed his Taser into Plaintiff's back as Plaintiff was on the floor with two deputies on top of him. (Amengual Dashcam Video, at 4:34-4:55.) Deputy Pepin argues his use of force was reasonable because he "could reasonably believe that the [deputies at the scene] were fighting [with Plaintiff] and that use of pain compliance in the form of asp baton strikes or taser applications was warranted." (Doc. #113, p. 19.) Deputy Pepin

asserts that when he used the baton and Taser, Plaintiff "did not have his hands behind his back for handcuffing and was still actively, physically resisting arrest." (Id. p. 7.) Plaintiff, however, testified at deposition that Pepin struck him with the baton and deployed the Taser into his back while he had his hands behind his back and was being handcuffed. (Doc. #114, p. 177.)

The video footage from Sergeant Amengual's dashcam does not definitively corroborate either Plaintiff's or Deputy Pepin's version of events, as it is unclear whether Plaintiff was resisting while Deputy Pepin deployed his Taser and struck Plaintiff with the baton. Viewing the facts in the light most favorable to Plaintiff, a jury may reasonably determine that Deputy Pepin used excessive force by Tasering Plaintiff and striking him with a baton as Plaintiff was on the floor, with two deputies on top of him, and with his hands behind his back during handcuffing. Indeed, under Plaintiff's version of events, such "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008). Given the disputed record and inconclusive video footage, a jury must ultimately resolve the material issues of fact relating to Deputy Pepin's use of force.

Further, as to the issue of qualified immunity, it was clearly established as of April 4, 2014 that an officer uses excessive force by "beating" an arrestee laying on the ground who "[a]t no

point was [] fighting back or attempting to escape." <u>Reese v. Herbert</u>, 527 F.3d 1253, 1273 (11th Cir. 2008).  Thus, on this record, the Court cannot conclude that Deputy Pepin is entitled to qualified immunity on Plaintiff's claim for excessive force.

### (2)  The False Arrest Claim (Count VIII)

Count VIII also includes a false arrest claim under § 1983. Deputy Pepin argues he is entitled to summary judgment because he had probable cause to arrest Plaintiff on April 4, 2014.  Deputy Pepin alternatively argues that even if he lacked probable cause to arrest Plaintiff, he had arguable probable cause to arrest Plaintiff and is thus qualified immunity on Plaintiff's false arrest claim.  The Court disagrees.

"Probable cause to arrest exists . . . when an arrest is objectively reasonable based on the totality of the circumstances." <u>Coffin v. Brandau</u>, 642 F.3d 999, 1006 (11th Cir. 2011)(citation and quotation omitted).  This standard is satisfied where "the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." <u>Brown v. City of Huntsville, Ala.</u>, 608 F.3d 724, 734 (11th Cir. 2010).  The Eleventh Circuit has recently stated:

> "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that

is not readily, or even usefully, reduced to a neat set of legal rules." District of Columbia v. Wesby, --- U.S. ---, 138 S. Ct. 577, 586, 199 L.Ed.2d 453 (2018) (quotation marks omitted). It "requires more than mere suspicion, but does not require convincing proof." Bailey v. Bd. of Cty. Comm'rs, 956 F.2d 1112, 1120 (11th Cir. 1992); see Wesby, 138 S. Ct. at 586 ("It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.") (quotation marks omitted). All in all, it's "not a high bar." Wesby, 138 S. Ct. at 586.

Gill, as Next Friend of K.C.R. v. Judd, No. 17-14525, 2019 WL 5304078, at *6 (11th Cir. Oct. 21, 2019).

Although an arrest without probable cause "violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." Skop v. City of Atlanta, GA, 485 F.3d 1130, 1137 (11th Cir. 2007). Indeed, an officer who "make[s] an arrest without probable cause [is] entitled to qualified immunity if there was arguable probable cause for the arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)(citation omitted). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)(citation and quotation omitted).

The arguable probable cause standard "is an objective one and does not include an inquiry [into] the officer's subjective intent

or beliefs." <u>Brown v. City of Huntsville, Ala.</u>, 608 F.3d 724, 735 (11th Cir. 2010)(citation omitted). Whether an officer possessed arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." <u>Id.</u> (citation omitted).

Deputy Pepin contends he had probable cause or arguable probable cause to arrest Plaintiff for resisting an officer with violence under Fla. Stat. § 843.01, and resisting an officer without violence under Fla. Stat. § 843.02. The resisting with violence statute provides that:

> Whoever knowingly and willfully resists, obstructs, or opposes [a law enforcement] officer . . . in the execution of legal process or in the lawful execution of any legal duty[] by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree.

Fla. Stat. § 843.01. The resisting without violence statute provides that:

> Whoever shall resist, obstruct, or oppose [a law enforcement] officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree.

Fla. Stat. § 843.02.

Deputy Pepin asserts he had probable cause or arguable probable cause to arrest Plaintiff for these offenses because "from [Deputy] Pepin's perspective it appeared that [Plaintiff] was physically resisting commands to allow himself to be handcuffed" and "it would objectively have appeared to [Deputy] Pepin that

[Plaintiff] was non-compliant with commands to turn over or to give up his arm so as to be handcuffed." (Doc. #113, p. 7.) As noted *supra*, Sergeant Amengual's dashcam does not definitively corroborate either Plaintiff's or Deputy Pepin's version of events, as it is unclear whether Plaintiff was resisting during handcuffing. Thus, on this record, the Court cannot conclude that Deputy Pepin had probable cause or arguable probable cause to arrest Plaintiff for resisting an officer with or without violence on the basis asserted by Deputy Pepin. Deputy Pepin's motion is therefore denied as to the false arrest claim included in Count VIII.

### (3)    The Malicious Prosecution Claims (Counts IX and X)

Count IX asserts a federal malicious prosecution claim under § 1983 and Count X asserts a malicious prosecution claim under Florida law. Deputy Pepin argues he is entitled to summary judgment on Counts IX and X because Plaintiff has not established the element of causation. The Court disagrees.

Both federal and state law claims for malicious prosecution are comprised of six elements:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the

present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004)(citations omitted).  An officer is the "legal cause of the original proceeding" when his conduct "was the proximate and efficient cause of putting the law in motion."  Harris v. Lewis State Bank, 482 So. 2d 1378, 1381 (Fla. 1st DCA 1986).

As to Plaintiff's charge for battery on a law enforcement officer, Deputy Pepin's Supplemental Narrative Report authored on April 4, 2014 states that Plaintiff "actively fought against Cpl Guth and Cpl Wingo" and that Plaintiff was "trying to move his arms to defeat the deputies." (Doc. #113-4, p. 64.)  Deputy Pepin argues this Supplemental Narrative Report cannot establish the legal causation element because Deputy Chapman, not Deputy Pepin, authored the initial Incident Report detailing Plaintiff's arrest. The Court is unpersuaded, however, because Deputy Chapman's Incident Report, in detailing Plaintiff's physical resistance, references Deputy Pepin's account as set forth in his Supplemental Narrative Report.  (Doc. #113-4, p. 57.)

Viewing this evidence in the light most favorable to Plaintiff, a jury may reasonably find that Deputy Pepin "was the proximate and efficient cause of putting the law in motion."

Harris, 482 So. 2d at 1381. For the foregoing reasons, Deputy Pepin's motion is denied as to Counts IX and X.[7]

### (4) The Assault and Battery Claim (Count XI)

Count XI asserts a claim for assault and battery under Florida law. Deputy Pepin argues he is entitled to summary judgment on Count XI because (1) Deputy Pepin's use of force was objectively reasonable under the circumstances; and (2) Deputy Pepin is entitled to immunity under Florida law pursuant to Fla. Stat. § 768.28(9).

A Florida law claim for assault and battery against a law enforcement officer is governed by the objective reasonableness standard of a federal excessive force claim. See Christie ex rel. estate of Christie v. Scott, 923 F. Supp. 2d 1308, 1328 (M.D. Fla. 2013)("[T]he crux of a state-law assault and battery claim against [] officers is whether a reasonable officer would believe that this level of force is necessary in the situation at hand." (citation and quotation omitted)). Thus, because of the material issues of fact discussed *supra*, the Court cannot determine whether Deputy Pepin's use of force was objectively reasonable.

---

[7] As to the state law claim for malicious prosecution, Deputy Pepin also argues he is entitled to immunity under Florida law pursuant to Fla. Stat. § 768.28(9). However, given the issues of fact concerning Plaintiff's resistance discussed *infra*, the Court cannot conclude that Deputy Pepin is entitled to such state-law immunity.

As to the issue of immunity under state law, Fla. Stat. §
768.28(9) "protects an officer from personal liability for acts
within the scope of his employment, unless the officer 'acted in
bad faith or with malicious purpose or in a manner exhibiting
wanton and willful disregard of human rights, safety, or
property.'" Claridy v. Golub, 632 F. App'x 565, 571 (11th Cir.
2015)(quoting Fla. Stat. § 768.28(9)). However, such immunity is
inapplicable where "a reasonable trier of fact could possibly
conclude that the conduct was willful and wanton . . . ." Furtado
v. Yun Chung Law, 51 So. 3d 1269, 1277 (Fla. 4th DCA 2011).

As discussed earlier, the video footage from Sergeant
Amengual's dashcam does not definitively corroborate either
Plaintiff's or Deputy Pepin's version of events, as it is unclear
whether Plaintiff was resisting when Deputy Pepin Tasered
Plaintiff and struck his back with a baton. Under Plaintiff's
version of events, Deputy Pepin used such force when Plaintiff had
his hands behind his back and was being handcuffed. If true, a
jury may reasonably "conclude that [Deputy Pepin's] conduct was
willful and wanton . . . ." Furtado, 51 So. 3d at 1277. Given
the issues of fact concerning Deputy Pepin's use of force, the
Court cannot conclude that Deputy Pepin is entitled to state-law
immunity pursuant to Fla. Stat. § 768.28(9). See Golub, 632 F.
App'x at 571("Defendant is not entitled to summary judgment . . .
based on immunity provided by § 768.28(9)(a)" where there is "a

question of fact as to whether Defendant acted willfully or with malice.").

## C. Plaintiff's First Amendment Retaliation Claim (Count XVI) Relating to the June 10, 2014 Trespass Warning

Count XVI[8] asserts a First Amendment retaliation claim under § 1983. It alleges that Defendant Pepin had a Dunkin' Donuts employee "agree to issue a trespass warning to [Plaintiff] even though he had just purchased two donuts and had left without being asked" in retaliation for Plaintiff's March 9, 2014 complaint to the CCSO. (Doc. #51, ¶¶ 363, 369). Defendant Pepin argues Count XVI should be dismissed because he is entitled to qualified immunity.[9] The Court agrees.

To establish a First Amendment retaliation claim, "a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and

---

[8] The Amended Complaint uses "Count XVI" twice, with one Count XVI asserting a First Amendment retaliation claim against Deputy Pepin (Doc. #51, p. 60), and the other Count XVI asserting an excessive force and false arrest claim against Deputy Wingo (Doc. #51, p. 67). The following analysis applies to the Count XVI asserted against Deputy Pepin.

[9] Deputy Pepin also argues he is entitled to summary judgment because there is no evidence establishing that Deputy Pepin was motivated to issue Plaintiff a trespass warning by Plaintiff's March 9, 2014 complaint. However, the Court need not reach that issue for the reasons set forth below.

the defendant's retaliatory actions." Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016)(citations omitted). It is "well established" that "state officials can act lawfully even when motivated by a dislike or hostility to certain protected behavior by a citizen . . . ." Foy v. Holston, 94 F.3d 1528, 1534 (11th Cir. 1996)(citation omitted). Thus, "[w]here the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful *and* unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity." Id. at 1535(emphasis in original).

Here, the uncontroverted testimony in this case establishes that Sarah Wolin asked Deputies Pepin and Ellis to issue Plaintiff a trespass warning for the Dunkin' Donuts.[10] This justifies issuing a trespass warning. See Gestewitz v. State, 34 So. 3d 832, 834-35 (Fla. 4th DCA 2010)("[A] police officer . . . may issue a trespass warning for unauthorized entrance into a structure" at

---

[10] Plaintiff disputes that Deputy Pepin was dispatched to McDonald's before Dunkin' Donuts, arguing the CAD Detail Report "show[s] that there was **no** call for service to McDonalds, but only a *field-initiated* call to Dunkin Donuts." (Doc. #128, p. 7) (emphasis in original.) The CAD Audit Report, however, clearly notes that Deputy Pepin first arrived at McDonald's in an "Incident Initiated By: SO/MONPLAISIR, NATALIE" at 8:56 P.M. (Doc. #116-1, p. 29.) The CAD Audit Report further reflects that the "Incident Type" was changed from a suspicious person at McDonald's to a "43: Trespassing" at Dunkin' Donuts at 9:02 P.M. (Id.)

the request of "a 'person authorized' to issue a trespass warning."); Fla. Stat. § 810.08(3)(defining "the term 'person authorized'" to include "any owner or lessee, or his or her agent.").

Even assuming Deputy Pepin was motivated to issue the trespass warning by Plaintiff's March 9, 2014 complaint, Deputy Pepin is entitled to qualified immunity unless it was clearly established as of June 10, 2014 that a law enforcement officer could not issue a trespass warning under the circumstances of this case. Foy, 94 F.3d at 1534. Plaintiff cites to no legal authority – and the Court is aware of none – establishing that a law enforcement officer violates the First Amendment by issuing a trespass warning at the request of a business establishment's employee, even if the officer had an unlawful motive for issuing the warning. Accordingly, Deputy Pepin is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. Id. at 1536 (holding that where "[d]efendants' conduct [was] arguably proper even if [d]efendants were motivated in substantial part by unlawful motives, [d]efendants' conduct was objectively reasonable for the purposes of qualified immunity" and defendants were entitled to summary judgment on the plaintiff's First Amendment retaliation claim). Deputy Pepin's motion is therefore granted as to Count XVI.

Accordingly, it is now

**ORDERED:**

1.    Defendant Scott Pepin's Motion for Summary Judgment (Doc. #113) is **GRANTED IN PART AND DENIED IN PART.**

2.    The motion is **GRANTED** as to Count XVI.

3.    The motion is **DENIED** as to Counts VIII, IX, X, and XI.

4.    The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this   5th   day of November, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record