UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT DALE HARRIS,

    Plaintiff,

v.                             Case No: 2:18-cv-17-FtM-29MRM

KEVIN RAMBOSK, in his official capacity as Sheriff of Collier County, Florida, KASEY P. WINGO, individually, MICHAEL D. CHAPMAN, individually, SCOTT PEPIN, individually, and ROSS ANTHONY, individually,

    Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on defendant Kevin Rambosk's Motion for Summary Judgment (Doc. #126) filed on June 24, 2019. Plaintiff filed a Response (Doc. #135) on July 8, 2019, defendant Kevin Rambosk filed a Reply (Doc. #139) on July 24, 2019, and plaintiff filed a Sur-Reply (Doc. #140) on July 29, 2019. For the reasons set forth below, the motion is granted.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if

the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces

a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

On May 2, 2018, plaintiff Robert Dale Harris (Plaintiff) filed an Amended Complaint (Doc. #51) against defendant Kevin Rambosk (Sheriff Rambosk) in his official capacity as Sheriff of Collier County. The Amended Complaint asserts two claims against Sheriff Rambosk under 42 U.S.C. § 1983 (Counts I and XV), alleging that he was deprived of his constitutional rights as a result of Sheriff Rambosk's failure to properly train his deputies. The undisputed facts[1] are as follows:

**A.  The March 9, 2014 Trespass Warning to the CCSO**

On March 9, 2014, Plaintiff called the Collier County Sheriff's Office (CCSO) to complain about Deputy Michael D. Chapman (Deputy Chapman). (Doc. #113, p. 3; Doc. #135, p. 2.) Plaintiff complained that while he was sitting outside of a McDonald's in Naples, Florida, Deputy Chapman threatened to trespass Plaintiff from "all local businesses." (Id.) Sergeant Bartolome Amengual

---

[1] Sheriff Rambosk adopts the statements of undisputed facts set forth in the motions for summary judgment filed by Deputies Wingo, Chapman, and Pepin. (Doc. #126, p. 2.) Thus, where appropriate, the Court cites to those motions below.

3

(Sergeant Amengual) and Deputy Kasey P. Wingo (Deputy Wingo) arrived at the scene and took Plaintiff's complaint. (Id.)

**B.   The April 4, 2014 Arrest**

On April 4, 2014, Plaintiff was repairing his friend Randy Leon Sulwilcowski's motorcycle that was warehoused at a storage facility in Naples, Florida. (Doc. #113, pp. 3-4; Doc. #135, p. 3.) Deputies Chapman and Wingo encountered Plaintiff as he was exiting the storage facility. (Id.) Deputies Wingo and Chapman ultimately arrested Plaintiff and engaged in a physical with Plaintiff while placing him under arrest. (Doc. #113, pp. 5-7; Doc. #135, p. 3.) Deputy Pepin arrived at the scene to assist Deputies Wingo and Chapman with Plaintiff's arrest. (Doc. #113, p. 6; Doc. #135, p. 3.) Deputy Pepin struck Plaintiff's back several times with a baton and deployed his Taser into Plaintiff's back. (Doc. #113, p. 6; Doc. #135, p. 3.)

Plaintiff was ultimately charged with three (3) counts of battery on a police officer; one (1) count of assault on a police officer; one (1) count of resisting an officer without violence; and one (1) count of loitering and prowling. (Doc. #51, ¶¶ 59-62; Doc. #135, p. 3.) On April 17, 2014, the State Attorney's Office filed a "Not Filing Charge" on all six counts. (Doc. #113, p. 8; Doc. #135, p. 3.)

**C. The May 29, 2014 Trespass Warning**

On May 29, 2014, CCSO Deputy Ross Anthony (Deputy Anthony) issued Plaintiff two trespass warnings: one for a Waffle House restaurant located at 3824 Tollhouse Drive in Naples, Florida, and one for a Shell gas station located at 3825 Tollgate Boulevard in Naples, Florida.[2] (Doc. #126, p. 3; Doc. #135, p. 4.) Plaintiff purchased cigarettes from the Shell gas station, sat outside for approximately five minutes, observed Deputy Anthony approaching, and entered the Waffle House. (Id.) Deputy Anthony testified that he approached Plaintiff because he had issued Plaintiff a trespass warning for the Shell gas station "a couple of weeks prior." (Doc. #135-16, p. 14.)

Deputy Anthony then entered the Waffle House, requested that Plaintiff leave the Waffle House to speak with him outside, and placed Plaintiff in handcuffs and took him outside the Waffle House. (Doc. #126, pp. 3-4; Doc. #135, pp. 4-5.) Deputy Anthony issued Plaintiff a trespass warning for the Waffle House restaurant

---

[2] Under "Reason for Contact," the Shell trespass warning states "bothering customers at Circle K." (Doc. #126-1.) Deputy Anthony testified at deposition that he referenced Circle K on the Shell trespass warning because the store attached to the Shell gas station is a Circle K and displays Circle K logos. (Doc. #135-16, p. 13.) Plaintiff asserts that there were no Circle K logos at the Shell gas station store. That dispute is ultimately irrelevant, however, because it is undisputed that on May 29, 2014, Plaintiff was issued a trespass warning for the Shell gas station located at 3825 Tollgate Boulevard in Naples, Florida – the same address listed on the trespass warning.

5

at the request of a Waffle House employee. (Doc. #126, p. 4; Doc. #135, p. 17.) The Shell gas station employees asked Plaintiff to leave the premises, and the trespass warning lists Ben Bagheri, the Shell gas station owner, as the "Name of Complainant." (Doc. #126-1, p. 1; Doc. #126, p. 4; Doc. #135, p. 17.)

**D.   The June 10, 2014 Trespass Warning**

On June 10, 2014, Plaintiff purchased donuts from Dunkin' Donuts in Naples, Florida; Plaintiff then took the donuts to the neighboring McDonald's, purchased a coffee from the McDonald's, and used his computer at an outside table. (Doc. #113, p. 9; Doc. #135, p. 5.) Deputy Pepin and Deputy Sean Ellis (Deputy Ellis) arrived at the scene, and Deputy Ellis ultimately issued Plaintiff a trespass warning for the Dunkin' Donuts. (Doc. #113, p. 9; Doc. #135, p. 6.) Under "Reason for Contact/Other Comments" the trespass warning states, "Trespass. Robert Harris stated that he does not consent to this." (Doc. #116-1, p. 23.)

Deputy Pepin testified at deposition that he and Deputy Ellis were dispatched to the McDonald's because the McDonald's management wanted Plaintiff to leave the premises. (Doc. #116, pp. 75-76.) Deputy Pepin further testified that when he arrived at the McDonald's, Sara Wolin, a Dunkin' Donuts employee,

6

approached him and asked that Deputy Pepin and Deputy Ellis[3] trespass Plaintiff from the Dunkin' Donuts because he was "'harassing customers and stealing stuff.'" (Doc. #116, p. 76.) Sarah Wolin testified at deposition that she "had seen the cop next to [Dunkin' Donuts] at the McDonald's and [] called him over and [] asked him to have [Plaintiff] trespassed." (Doc. #117, p. 18.) Sarah Wolin testified that, earlier on June 10, 2014, Plaintiff "got upset because [she] told him that [she] couldn't give him [free food]" and that Plaintiff "got very mad and stormed out and then came back in and then stormed back out again." (Id. pp. 17-18.) Sarah Wolin further testified that she requested that Plaintiff be trespassed from Dunkin' Donuts because he had "been coming to [her] place of employment for several months, getting free food, making [her] uncomfortable, and [she] did not want [Plaintiff] at [her] place of employment anymore." (Id. p. 21.)

**E.    The March 26, 2015 Trespass Warning**

On March 26, 2015, CCSO Corporal Robert Bremer (Corporal Bremer) issued Plaintiff a trespass warning for Sew Shore, a retail business located in Naples, Florida. (Doc. #126, p. 4; Doc. #135, p. 10.) Sew Shore sells police uniforms and equipment, and Plaintiff was at Sew Shore on March 26, 2015 to purchase handcuffs.

---

[3] It is unclear to the Court which other deputies were present at the scene.

7

(Doc. #126, p. 4; Doc. #135, p. 11.) A Sew Shore employee ultimately became concerned with Plaintiff's presence at the store and called the police.[4] (Doc. #126, p. 4; Doc. #135, pp. 10-12.) Corporal Bremer responded to the scene, and John Marshall, a Sew Shore employee[5], requested that Corporal Bremmer issue Plaintiff the trespass warning because Plaintiff was acting "belligerent" and "difficult." (Doc. #126-4, p. 83.)

**F.   The December 16, 2016 Arrest**

On December 16, 2016, Deputy Wingo stopped Plaintiff's vehicle after observing it being driven with an invalid license plate.[6] (Doc. #112, p. 7; Doc. #129, pp. 6-7; Doc. #135, p. 8.) Deputy Wingo had received information that Plaintiff's vehicle was involved in transporting narcotics.[7] (Doc. #112, p. 7; Doc. #135, p. 8.) After initiating the traffic stop, Deputy Wingo approached Plaintiff and the following interaction occurred and was captured on Plaintiff's in-car camera:

---

[4] The parties dispute what led to this employee's concern.

[5] The parties refer to John Marshall as the Sew Shore owner. However, John Marshall testified that at the time of the trespass warning he was a Sew Shore employee and had not yet purchased the business. (Doc. #126-4, pp. 9-10.)

[6] Specifically, Plaintiff was driving a Ford vehicle on which a license plate registered to a GMC vehicle was affixed.

[7] Deputy Wingo believed that Plaintiff's brother was using Plaintiff's vehicle to transport narcotics. (Doc. #112, p. 7; Doc. #129, p. 7.)

| | |
|---|---|
| Deputy Wingo: | "Hello, sir." |
| Plaintiff: | "One second, I'm calling my attorney." |
| Deputy Wingo: | "I need your license, registration, [and] insurance." |
| Plaintiff: | "Let me call my attorney." |
| Deputy Wingo: | "No, you need it now." |

(Plaintiff Video, at 3:17-3:24.) Deputy Wingo then attempted to open the vehicle door, but Plaintiff pulled the door closed. Deputy Wingo next opened the vehicle door and attempted to remove Plaintiff from the vehicle. (Id. at 3:24-3:26.) As Deputy Wingo entered the vehicle, Plaintiff lifted his knees, which prevented Deputy Wingo from removing Plaintiff from the vehicle. (Id.) Deputy Wingo then attempted to deploy his Taser on Plaintiff, but Plaintiff grabbed the Taser and pushed it away. (Id. at 3:35-3:38.) Deputy Wingo continued his attempts to subdue Plaintiff with his Taser, but Plaintiff continued to resist Deputy Wingo's efforts. (Id. at 3:40-6:51.) Shortly thereafter, other deputies arrived at the scene and assisted Deputy Wingo in removing Plaintiff from the vehicle and placing him under arrest. (Id. at 6:52-9:47.)

Plaintiff was ultimately charged with one (1) count of assault on a law enforcement officer; one (1) count of battery on a law enforcement officer; one (1) count of resisting an officer with

9

violence; and one (1) count of resisting an officer without violence. (Doc. #129-8, p. 8.) Plaintiff was held in jail for several days, and the charges were later dismissed on January 17, 2017 when the State Attorney's Office filed a "Not Filing Charge" on all four counts. (Doc. #129-8, p. 8.)

**III.**

Counts I and XV assert claims against Sheriff Rambosk under § 1983 for failing to properly and adequately train his deputies. Specifically, Counts I and XV allege that the CCSO deputies' false arrests, use of excessive force, and issuance of illegal trespass warnings were the result of Sheriff Rambosk's failure to properly train his deputies "in the law regarding probable cause"; the law regarding "unlawful seizure during an investigatory stop [and] excessive force in making such unlawful seizure"; "how his deputies respond to individuals of lower socio-economic standing and cognitive deficiencies"; and the law regarding unlawful trespass warnings. (Doc. #51, ¶¶ 192, 193, 202, 373-92.)

Under § 1983, a municipality may not be held vicariously "liable for the wrongful actions of its police officers . . . ." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)(citation omitted). Thus, "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." Id.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011)(citation omitted). A plaintiff asserting such a claim "must prove that official municipal policy was responsible for the action that caused his injury." Johnson v. Dixon, 666 F. App'x 828, 830 (11th Cir. 2016)(citation omitted). A municipality's failure to train its "employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983" where the failure to train "amount[s] to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. at 830. Municipal "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61.

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (citation and quotation omitted). "A single incident would not be so

pervasive as to be a custom . . . because a custom must be such a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011)(citation and quotation omitted).[8]

Sheriff Rambosk argues he is entitled to summary judgment on Counts I and XV because Plaintiff has failed to establish a pattern of similar constitutional violations. The Court agrees. While the Court has found that Plaintiff's April 4, 2014 arrest was not supported by probable cause or arguable probable cause, Plaintiff has set forth no evidence establishing a prior pattern of unlawful seizures or arrests by CCSO deputies. Similarly, Plaintiff has not identified a pattern of arrests with excessive force by CCSO deputies.[9] Plaintiff has similarly failed to set forth any

---

[8] As Plaintiff recognizes (Doc. #135, p. 19), "a pattern of similar violations might not be necessary to show deliberate indifference" in a "narrow range of circumstances," such as "training [] officers in the constitutional limitation on the use of deadly force." Connick, 563 U.S. at 63 (quotations omitted). The Court finds this exception inapplicable in this case.

[9] To the extent Plaintiff relies on his December 16, 2016 arrest to demonstrate a pattern of false arrests and use of excessive force by CCSO deputies, that incident is inapplicable to this analysis. As set forth in the Court's Opinion and Order (Doc. #173, pp. 33-38), Deputy Wingo's December 16, 2016 arrest was supported by probable cause and his use of force was objectively reasonable under the circumstances.

evidence establishing a pattern of deputies' inability to respond to individuals of lower socioeconomic standing or with cognitive deficiencies. See Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005)("[A] plaintiff [cannot] establish a [municipal liability] claim when he [cannot] point to any other incidents involving similar facts.").

Plaintiff has also failed to establish a pattern of CCSO deputies issuing unlawful trespass warnings. It is undisputed that Plaintiff was asked to leave the Shell gas station by Shell employees and that the Shell trespass warning lists the gas station owner, Ben Bagheri, as the person requesting the trespass warning.[10] It is further undisputed that (1) the Waffle House trespass warning was requested by a Waffle House employee; (2) the Sew Shore trespass warning was requested by a Sew Shore employee; and (3)

---

[10] Plaintiff disputes that Mr. Bagheri authorized the Shell gas station trespass warning, relying on an affidavit by Plaintiff's private investigator. In the affidavit, Plaintiff's private investigator avers that he spoke with two Shell gas station employees who told him that Mr. Bagheri "would not have authorized a trespass warning against" Plaintiff. (Doc. #135-15, p. 6.) Plaintiff also relies on this affidavit to establish that the Shell employees only asked Plaintiff to leave the Shell gas station "to 'keep the peace' with the Sheriffs [sic] Department in case they needed to call a deputy for assistance in the future." (Id. pp. 6-7.) Such hearsay, however, is insufficient to create an issue of fact as to whether Mr. Bagheri authorized the trespass warning or whether the Shell employees asked Plaintiff to leave. See Hughes v. Amerada Hess Corp., 187 F.R.D. 682, 688 (M.D. Fla. 1999)(A party "may not rely on rank hearsay . . . to oppose proper motions for summary judgment.").

13

the Dunkin' Donuts trespass warning was requested by a Dunkin' Donuts employee.[11] As discussed in the Court's previous Opinion and Order (Doc. #175, pp. 24-27), although Plaintiff asserts the CCSO deputies had unlawful motives for issuing the trespass warnings, such trespass warnings are nonetheless lawful. See Gestewitz v. State, 34 So. 3d 832, 834-35 (Fla. 4th DCA 2010)("[A] police officer . . . may issue a trespass warning for unauthorized entrance into a structure" at the request of "a 'person authorized' to issue a trespass warning."); Fla. Stat. § 810.08(3)(defining "the term 'person authorized'" to include "any owner or lessee, or his or her agent."). The Court thus finds that these incidents are insufficient to establish that Sheriff Rambosk "knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold, 151 F.3d at 1350.

For the foregoing reasons, Plaintiff has failed to set forth evidence establishing a pattern of similar constitutional violations. Sheriff Rambosk is therefore entitled to summary

---

[11] Even assuming the Shell and Waffle House incident was unlawful, such evidence is insufficient to establish a pattern of deputies issuing unlawful trespass warnings. See Church v. City of Huntsville, 30 F.3d 1332, 1344 (11th Cir. 1994)("[S]ingle instance of 'harassment' . . . certainly does not establish a pattern or evidence a policy.").

14

judgment on Plaintiff's failure to train claims because there can be no municipal liability without "evidence of a history of widespread prior abuse by [d]epartment personnel that would have put the sheriff on notice of the need for improved training or supervision." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990); Rosa v. City of Fort Myers, No. 205-CV-481-FTM-29SPC, 2007 WL 3012650, at *17 (M.D. Fla. Oct. 12, 2007)("[T]he City cannot be found to have acted with deliberate indifference in training" regarding excessive force where "there is no evidence of any prior similar incidents . . . [involving] excessive force.").

Accordingly, it is now

**ORDERED:**

Defendant Kevin Rambosk's Motion for Summary Judgment (Doc. #126) is **GRANTED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of November, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record