UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT DALE HARRIS,

      Plaintiff,

v.                           No. 2:18-cv-17-JES-MRM

KASEY P. WINGO, individually,
& MICHAEL D. CHAPMAN,
individually.

      Defendants.

_____/

## **PROPOSED JURY INSTRUCTIONS**

Pursuant to the Court's Amended Case Management and Scheduling Order (Doc. 217), Defendants Kasey Wingo and Michael Chapman submit the following jury instructions. Plaintiff disagrees with several of the proposed instructions and has offered edits. It is Defendants' understanding that Plaintiff will be providing a separate copy of these instructions with his proposed changes denoted.

## PRELIMINARY INSTRUCTIONS

### General Preliminary Instruction[1]

Members of the Jury: Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty: It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:  You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

---

[1] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 1.1.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>: During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness

cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses: To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>: This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Robert Harris, claims that deputies with the Collier County Sheriff's Office violated his state and federal rights when they arrested him outside a self-storage facility on April 4, 2014. Defendants Kasey Wingo and Michael Chapman are law enforcement officers who participated in Harris's arrest. Harris has brought claims for false arrest, excessive force, malicious prosecution, First Amendment retaliation, and battery against Deputy Wingo and Deputy Chapman. The Deputies deny those claims and contend that they acted within their lawful authority when they arrested Harris.

<u>Burden of proof</u>: Harris has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Harris must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Harris and the evidence favoring the Deputies on opposite sides of balancing scales, Harris needs to make the scales tip to his side. If Harris fails to meet this burden, you must find in favor of the Deputies.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Deputy Wingo and Deputy Chapman have the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts the Deputies must prove for any affirmative defense. After considering all the evidence, if you decide that either Deputy Chapman or Deputy Wingo has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

<u>Conduct of the jury</u>:  While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law –

before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base

your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes: If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial: Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Harris will present his witnesses and ask them questions. After Harris questions the witness, Deputy Chapman or Deputy Wingo may ask the witness questions – this is called "cross-examining" the witness. Then the Deputies will present their witnesses, and Harris may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

**Interim Statements[2]**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

---

[2] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 1.5.

**BASIC INSTRUCTIONS**

**Introduction[3]**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

---

[3] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.1.

**The Duty to Follow Instructions**[4]

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

---

[4] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.2.

## Consideration of Direct and Circumstantial Evidence;
##     Argument of Counsel; Comments by the Court[5]

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

---

[5] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.3.

13

**Credibility of Witnesses**[6]

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

---

[6] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.4.

**Impeachment of Witnesses Because of Inconsistent Statements[7]**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

---

[7] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.5.2.

**Expert Witness[8]**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

---

[8] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.6.1.

3

**Expert Witness – When Expert Fees Represent a Significant Portion of the Witness's Income[9]**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

---

[9] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.6.2.

**Responsibility for Proof – Plaintiff's Claim[s], Cross Claims,
Counterclaims – Preponderance of the Evidence[10]**

In this case it is the responsibility of Harris to prove every essential part of his claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Harris's claims are more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Harris.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Harris's claims by a preponderance of the evidence, you should find for the Deputies as to that claim.

---

[10] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.7.1.

**Responsibility for Proof – Affirmative Defense**
    **Preponderance of the Evidence[11]**

In this case, Deputies Chapman and Wingo have asserted affirmative defenses. Even if Harris proves his claims by a preponderance of the evidence, the Deputies can prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Deputies do not have to disprove Harris's claims, but if the Deputies raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

---

[11] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.7.2.

**Duty to Deliberate When Only the Plaintiff Claims Damages**[12]

Of course, the fact that I have given you instructions concerning the issue of Harris's damages should not be interpreted in any way as an indication that I believe that Harris should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

---

[12] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.8.1.

**Election of Foreperson Explanation of Verdict Form[13]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

---

[13] Unless otherwise indicated in a footnote, this heading and the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 3.9.

## SUBSTANTIVE INSTRUCTIONS

**Count II – False Arrest 42 U.S.C. § 1983[14]**

Plaintiff Robert Harris claims that Deputy Kasey Wingo, while acting under color of law intentionally committed acts that violated Harris's constitutional right not to be arrested without probable cause.

Under the Fourth Amendment to the United States Constitution, every person has the right not to be arrested without probable cause.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

<u>First</u>:   That Deputy Wingo intentionally committed acts that violated Harris's constitutional right not to be arrested without probable cause;

<u>Second</u>: That Deputy Wingo's conduct caused Harris's injuries; and.

<u>Third</u>:   That Deputy Wingo acted under color of law.

For the first element, Harris claims that Deputy Wingo arrested him without probable cause. Deputy Wingo may arrest a person without a warrant whenever the facts and circumstances within his knowledge, based on reasonably trustworthy information, would cause a reasonable officer

---

[14] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.3, which governs unlawful arrests under the Fourth Amendment.

to believe that the person has committed, is committing, or is about to commit an offense. It is a criminal offense for any person to resist a lawful command from an officer during an investigatory stop.[15]

The Court has already determined, as a matter of law, that there was a valid investigatory stop.[16]   Accordingly, at issue for your consideration is whether Harris resisted a lawful command from the deputies during the investigatory stop.  During an investigatory stop, an officer can lawfully take reasonable action in response to the demands of the situation.[17]

For the second element, Deputy Wingo's conduct caused Harris's injuries if Harris would not have been injured without Deputy Wingo's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Wingo's conduct.

For the third element, you must decide whether Deputy Wingo acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the

---

[15] <u>Lu Jing v. State</u>, 316 So. 3d 724, 730 (Fla. 4th DCA 2021) (citing Fla. Stat. § 843.02).

[16] <u>Harris v. Rambosk</u>, No. 2:18-CV-17-FTM-29MRM, 2019 WL 5722080 (M.D. Fla. Nov. 5, 2019).

[17] <u>Reynolds v. State</u>, 592 So. 2d 1082, 1085 (Fla. 1992).

limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

If you find Harris has proven each fact that he must prove, you must decide the issue of his damages.  If you find that Harris has not proven each of these facts, then you must find for Deputy Wingo.

**Count V – False Arrest 42 U.S.C. § 1983[18]**

Plaintiff Robert Harris claims that Deputy Michael Chapman, while acting under color of law intentionally committed acts that violated Harris's constitutional right not to be arrested without probable cause.

Under the Fourth Amendment to the United States Constitution, every person has the right not to be arrested without probable cause.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First:   That Deputy Chapman intentionally committed acts that violated Harris's constitutional right not to be arrested without probable cause;

Second: That Deputy Chapman's conduct caused Harris's injuries; and.

Third:   That Deputy Chapman acted under color of law.

For the first element, Harris claims that Deputy Chapman arrested him without probable cause. Deputy Chapman may arrest a person without a warrant whenever the facts and circumstances within his knowledge, based on reasonably trustworthy information, would cause a reasonable officer

---

[18] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.3, which governs unlawful arrests under the Fourth Amendment.

to believe that the person has committed, is committing, or is about to commit an offense. It is a criminal offense for any person to resist a lawful command from an officer during an investigatory stop.[19]

The Court has already determined, as a matter of law, that there was a valid investigatory stop.[20]   Accordingly, at issue for your consideration is whether Harris resisted a lawful command from the deputies during the investigatory stop.  During an investigatory stop, an officer can lawfully take reasonable action in response to the demands of the situation.[21]

For the second element, Deputy Chapman's conduct caused Harris's injuries if Harris would not have been injured without Deputy Chapman's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Chapman's conduct.

For the third element, you must decide whether Deputy Chapman acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the

---

[19] Lu Jing v. State, 316 So. 3d 724, 730 (Fla. 4th DCA 2021) (citing Fla. Stat. § 843.02).

[20] Harris v. Rambosk, No. 2:18-CV-17-FTM-29MRM, 2019 WL 5722080 (M.D. Fla. Nov. 5, 2019).

[21] Reynolds v. State, 592 So. 2d 1082, 1085 (Fla. 1992).

limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

If you find Harris has proven each element that he must prove, you must decide the issue of his damages.  If you find that Harris has not proven each of these elements, then you must find for Deputy Chapman.

**Count III – Malicious Prosecution 42 U.S.C. § 1983[22]**

Plaintiff Robert Harris claims that Deputy Kasey Wingo, while acting under color of law, maliciously caused criminal proceedings to be commenced against or continued against Harris without probable cause and because of those proceedings, Harris was unlawfully seized in violation of his rights under the United States Constitution.

Under the Fourth Amendment to the United States Constitution, every person has the right not to be seized without probable cause.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

<u>First</u>: That Deputy Wingo caused a criminal proceeding to be instituted or continued against Harris;

<u>Second</u>: That Deputy Wingo acted with malice and without probable cause;

<u>Third</u>: That the proceeding terminated in Harris's favor. The parties have agreed that the criminal proceeding terminated in Harris's favor, so you should accept that as a proven fact;

---

[22] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.5, which governs unlawful arrests under the Fourth Amendment.

<u>Fourth</u>: That Harris was unlawfully seized as a result of the criminal proceeding;

   <u>Fifth</u>: That Deputy Wingo's conduct caused Harris's injuries; and

   <u>Sixth</u>: That Deputy Wingo acted under color of law.

For the second element, you must decide whether Deputy Wingo's actions causing the criminal proceeding to be instituted or continued were taken with malice and without probable cause. To prove malice Harris must show that Deputy Wingo's actions were intentional and without justification or excuse.[23] Probable cause exists whenever the facts and circumstances within Deputy Wingo's knowledge, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed a criminal offense.

For the fourth element, you must decide whether Harris was unlawfully seized as a result of the criminal proceeding. A seizure under the Fourth Amendment occurs when there is an undue restraint placed on an individual's personal liberty. The seizure must have occurred after the beginning of Harris's criminal proceeding. In the case of a warrantless arrest, a criminal proceeding begins after the individual is arraigned or indicted.

---

[23] The Eleventh Circuit has not enunciated a federal malice standard for § 1983 malicious prosecution claims.  Accordingly, the pattern instructions require the parties to insert the state law standard.  This definition of malice was pulled from <u>Olson v. Johnson</u>, 961 So. 2d 356, 359 (Fla. 2d DCA 2007).

For the fifth element, Deputy Wingo's conduct caused Harris's injuries if Harris would not have been injured without Deputy Wingo's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Wingo's conduct.

For the sixth element, you must decide whether Deputy Wingo acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

If you find Harris has proven each element that he must prove, you must decide the issue of his damages.  If you find that Harris has not proven each of these elements, then you must find for Deputy Wingo.

**Count VI – Malicious Prosecution 42 U.S.C. § 1983[24]**

Plaintiff Robert Harris claims that Deputy Michael Chapman, while acting under color of law, maliciously caused criminal proceedings to be commenced against or continued against Harris without probable cause and because of those proceedings, Harris was unlawfully seized in violation of his rights under the United States Constitution.

Under the Fourth Amendment to the United States Constitution, every person has the right not to be seized without probable cause.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First: That Deputy Chapman caused a criminal proceeding to be instituted or continued against Harris;

Second: That Deputy Chapman acted with malice and without probable cause;

Third: That the proceeding terminated in Harris's favor. The parties have agreed that the criminal proceeding terminated in Harris's favor, so you should accept that as a proven fact;

---

[24] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.5, which governs malicious prosecutions under the Fourth Amendment.

18

Fourth: That Harris was unlawfully seized as a result of the criminal proceeding;

Fifth: That Deputy Chapman's conduct caused Harris's injuries; and

Sixth: That Deputy Chapman acted under color of law.

For the second element, you must decide whether Deputy Chapman's actions causing the criminal proceeding to be instituted or continued were taken with malice and without probable cause. To prove malice Harris must show that Deputy Chapman's actions were intentional and without justification or excuse.[25] Probable cause exists whenever the facts and circumstances within Deputy Chapman's knowledge, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed a criminal offense.

For the fourth element, you must decide whether Harris was unlawfully seized as a result of the criminal proceeding. A seizure under the Fourth Amendment occurs when there is an undue restraint placed on an individual's personal liberty. The seizure must have occurred after the beginning of Harris's criminal proceeding. In the case of a warrantless arrest, a criminal proceeding begins after the individual is arraigned or indicted.

---

[25] The Eleventh Circuit has not enunciated a federal malice standard for § 1983 malicious prosecution claims. Accordingly, the pattern instructions require parties to insert the state law standard. This definition of malice was pulled from Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007).

19

For the fifth element, Deputy Chapman's conduct caused Harris's injuries if Harris would not have been injured without Deputy Chapman's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Chapman's conduct.

For the sixth element, you must decide whether Deputy Chapman acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

If you find Harris has proven each element that he must prove, you must decide the issue of his damages.  If you find that Harris has not proven each of these elements, then you must find for Deputy Chapman.

**Count XIII – First Amendment Retaliation 42 U.S.C. § 1983[26]**

Plaintiff Robert Harris claims that Deputy Kasey Wingo, while acting under color of law, arrested him in retaliation for filing a prior complaint with the Collier County Sheriff's Office and for questioning the premise of why he was stopped outside the storage facility in violation of the First Amendment.

A person's right to properly question or make complaints about law enforcement officers who engage them during searches and seizures is protected by the Constitution.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First: That Harris filed a complaint with the Collier County Sheriff's Office or properly questioned the basis of his stop by the deputies.

Second: That Deputy Wingo arrested Harris in retaliation for any of this protected speech;

Third: That Harris's protected speech was a motivating factor in Deputy Wingo's decision to arrest Harris;

---

[26] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.1, which governs First Amendment retaliation.

Fourth: That Deputy Wingo's actions of arresting Harris would likely deter a similarly situated reasonable person from engaging in similar protected speech;

Fifth: That Deputy Wingo acted without probable cause;[27] and

Sixth: That Deputy Wingo acted under color of law.

For the fifth element, Harris claims that Deputy Wingo arrested him without probable cause. Deputy Wingo may arrest a person without a warrant whenever the facts and circumstances within his knowledge, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed, is committing, or is about to commit an offense.[28]

For the sixth element, you must decide whether Deputy Wingo acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

---

[27] The Eleventh Circuit's pattern instruction is not specific to retaliatory arrests, like Harris is alleging here.  When dealing with First Amendment retaliatory arrest claims, the Supreme Court requires the plaintiff to prove the absence of probable cause.  See Nieves v. Bartlett, 139 S. Ct. 1715 (2019).

[28] This definition of probable cause is taken from the Eleventh Circuit pattern instruction on False Arrest.

If you find Harris has proven each of the elements he must prove, then you must consider Deputy Wingo's contention that he would have arrested Harris anyway. To succeed on this contention, Deputy Wingo must prove by a preponderance of the evidence that he would have done the same thing if Harris had not filed a complaint with the Collier County Sheriff's Office or questioned the basis of his stop by the deputies.

If you find Harris has proven each of the elements he must prove and if you find that Deputy Wingo has not proven his contention, you must then decide the issue of Harris's damages.

However, if you find that Harris did not prove each of the facts he must prove, or if you find that Deputy Wingo proved his contention, then you must find for Deputy Wingo.

**Count XIII – First Amendment Retaliation 42 U.S.C. § 1983[29]**

Plaintiff Robert Harris claims that Deputy Michael Chapman, while acting under color of law, arrested him in retaliation for filing a prior complaint with the Collier County Sheriff's Office and for questioning the premise of why he was stopped outside the storage facility in violation of the First Amendment.

A person's right to properly question or make complaints about law enforcement officers who engage them during searches and seizures is protected by the Constitution.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First: That Harris filed a complaint with the Collier County Sheriff's Office or properly questioned the basis of his stop by the deputies.

Second: That Deputy Chapman arrested Harris in retaliation for any of this protected speech;

Third: That Harris's protected speech was a motivating factor in Deputy Chapman's decision to arrest Harris;

---

[29] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.1, which governs First Amendment retaliation.

Fourth: That Deputy Chapman's actions of arresting Harris would likely deter a similarly situated reasonable person from engaging in similar protected speech;

Fifth: That Deputy Chapman acted without probable cause;[30] and

Sixth: That Deputy Chapman acted under color of law.

For the fifth element, Harris claims that Deputy Chapman arrested him without probable cause. Deputy Chapman may arrest a person without a warrant whenever the facts and circumstances within his knowledge, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed, is committing, or is about to commit an offense.[31]

For the sixth element, you must decide whether Deputy Chapman acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

---

[30] The Eleventh Circuit's pattern instruction is not specific to retaliatory arrests, like Harris is alleging here.  When dealing with First Amendment retaliatory arrest claims, the Supreme Court requires the plaintiff to prove the absence of probable cause.  See Nieves v. Bartlett, 139 S. Ct. 1715 (2019).

[31] This definition of probable cause is taken from the Eleventh Circuit pattern instruction on False Arrest.

If you find Harris has proven each of the elements he must prove, then you must consider Deputy Chapman's contention that he would have arrested Harris anyway. To succeed on this contention, Deputy Chapman must prove by a preponderance of the evidence that he would have done the same thing if Harris had not filed a complaint with the Collier County Sheriff's Office or questioned the basis of his stop by the deputies.

If you find Harris has proven each of the elements he must prove and if you find that Deputy Chapman has not proven his contention, you must then decide the issue of Harris's damages.

However, if you find that Harris did not prove each of the elements he must prove, or if you find that Deputy Chapman proved his contention, then you must find for Deputy Chapman.

**Count II – Excessive Force 42 U.S.C. § 1983[32]**

Plaintiff Robert Harris claims that Deputy Kasey Wingo, while acting under color of law, intentionally committed acts that violated Harris's constitutional right to be free from the use of excessive or unreasonable force during an arrest.

Under the Fourth Amendment to the United States Constitution, every person has the right not to be subjected to excessive or unreasonable force while being arrested by a law enforcement officer—even though the arrest is otherwise made in accordance with the law.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First: That Deputy Wingo intentionally committed acts that violated Harris's constitutional right not to be subjected to excessive or unreasonable force during an arrest;

Second: That Deputy Wingo's conduct caused Harris's injuries; and

Third: That Deputy Wingo acted under color of law.

For the first element, Harris claims that Deputy Wingo used excessive force when arresting him. When making a lawful arrest, an officer has the right to use reasonably necessary force to complete the

---

[32] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.4, which governs excessive force claims.

arrest. Whether a specific use of force is excessive or unreasonable depends on factors such as the crime's severity, whether a suspect poses an immediate violent threat to others, whether the suspect resists or flees, the need for application of force, the relationship between the need for force and the amount of force used, and the extent of the injury inflicted.

You must decide whether the force Deputy Wingo used in making the arrest was excessive or unreasonable based on the degree of force a reasonable and prudent law enforcement officer would have applied in making the arrest under the same circumstances. Deputy Wingo's underlying intent or motivation is irrelevant.

For the second element, Deputy Wingo's conduct caused Harris's injuries if Harris would not have been injured without Deputy Wingo's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Wingo's conduct.

For the third element, you must decide whether Deputy Wingo acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

If you find Harris has proven each element that he must prove, you

28

must decide the issue of his damages. If you find that Harris has not proven

each of these elements, then you must find for Deputy Wingo.

**Count V – Excessive Force 42 U.S.C. § 1983**[33]

Plaintiff Robert Harris claims that Deputy Michael Chapman, while acting under color of law, intentionally committed acts that violated Harris's constitutional right to be free from the use of excessive or unreasonable force during an arrest.

Under the Fourth Amendment to the United States Constitution, every person has the right not to be subjected to excessive or unreasonable force while being arrested by a law enforcement officer—even though the arrest is otherwise made in accordance with the law.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First: That Deputy Chapman intentionally committed acts that violated Harris's constitutional right not to be subjected to excessive or unreasonable force during an arrest;

Second: That Deputy Chapman's conduct caused Harris's injuries; and

Third: That Deputy Chapman acted under color of law.

For the first element, Harris claims that Deputy Chapman used excessive force when arresting him. When making a lawful arrest, an officer has the right to use reasonably necessary force to complete the

---

[33] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.4, which governs excessive force claims.

arrest. Whether a specific use of force is excessive or unreasonable depends on factors such as the crime's severity, whether a suspect poses an immediate violent threat to others, whether the suspect resists or flees, the need for application of force, the relationship between the need for force and the amount of force used, and the extent of the injury inflicted.

You must decide whether the force Deputy Chapman used in making the arrest was excessive or unreasonable based on the degree of force a reasonable and prudent law enforcement officer would have applied in making the arrest under the same circumstances. Deputy Chapman's underlying intent or motivation is irrelevant.

For the second element, Deputy Chapman's conduct caused Harris's injuries if Harris would not have been injured without Deputy Chapman's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Chapman's conduct.

For the third element, you must decide whether Deputy Chapman acted under color of law. A government official acts "under color" of law when acting within the limits of lawful authority. He also acts under color of law when he claims to be performing an official duty but his acts are outside the limits of lawful authority and abusive in manner, or he acts in a way that misuses his power and is able to do so only because he is an official.

If you find Harris has proven each element that he must prove, you

must decide the issue of his damages. If you find that Harris has not proven each of these elements, then you must find for Deputy Chapman.

**Count VII – Malicious Prosecution Florida Law**[34]

Plaintiff Robert Harris claims that Deputy Casey Wingo maliciously and without probable cause filed and continued criminal proceedings against him which later terminated in favor of Harris and which caused him harm.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First: That a criminal judicial proceeding was commenced or continued against him;

Second: That Deputy Wingo caused the prosecution of the criminal proceeding;

Third: That the criminal proceeding terminated in Harris's favor. The parties have agreed that the criminal proceeding terminated in Harris's favor, so you should accept that as a proven fact;

Fourth: That Deputy Wingo acted with malice;

Fifth: That Deputy Wingo acted without probable cause;

Sixth: That Deputy Wingo's conduct caused Harris's damages.[35]

---

[34] Unless otherwise indicated, the substance of the instruction below is taken from the Florida Supreme Court Pattern Jury Instruction 406, which governs malicious prosecution claims under Florida law. Modifications have been made to the format to mirror the federal instructions above and thereby avoid confusion.

[35] These elements are derived from Levine v. Hunt, 932 So. 2d 1292, 1293 (Fla. 2d DCA 2006).

For the second element, Deputy Wingo is regarded as having instituted or continued a criminal proceeding against Harris if the proceeding resulted directly and in natural and continuous sequence from Deputy Wingo's actions, so that it reasonably can be said that, but for his actions, the proceeding would not have been instituted or continued. Deputy Wingo is not regarded as having instituted or continued a criminal proceeding against another if in good faith he or she made a full and fair disclosure of what he or she knew to the proper authorities and left the decision to institute or continue the prosecution entirely to the judgment of the authorities.

For the fourth element, Deputy Wingo is regarded as acting maliciously if, in instituting or continuing the criminal proceedings against Harris, he did so for the primary purpose of injuring Harris, or recklessly and without regard for whether the proceeding is justified, or for any primary purpose except to bring Harris to justice. In determining whether Deputy Wingo acted maliciously, you may consider all the circumstances at the time of the conduct complained of, including any lack of probable cause.

For the fifth element, probable cause means that at the time of instituting or continuing a criminal proceeding against Harris, the facts and circumstances known to Deputy Wingo were sufficiently strong to support a reasonable belief that Harris had committed a criminal offense.

For the sixth element, Deputy Wingo's conduct caused Harris's

injuries if Harris would not have been injured without Deputy Wingo's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Wingo's conduct.

If you find Harris has proven each element that he must prove, you must decide the issue of his damages.  If you find that Harris has not proven each of these elements, then you must find for Deputy Wingo.

## Count VII – Malicious Prosecution Florida Law[36]

Plaintiff Robert Harris claims that Deputy Michael Chapman maliciously and without probable cause filed and continued criminal proceedings against him which later terminated in favor of Harris and which caused him harm.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:

First: That a criminal judicial proceeding was commenced or continued against him;

Second: That Deputy Chapman caused the prosecution of the criminal proceeding;

Third: That the criminal proceeding terminated in Harris's favor. The parties have agreed that the criminal proceeding terminated in Harris's favor, so you should accept that as a proven fact;

Fourth: That Deputy Chapman acted with malice;

Fifth: That Deputy Chapman acted without probable cause;

Sixth: That Deputy Chapman's conduct caused Harris's damages.[37]

---

[36] Unless otherwise indicated, the substance of the instruction below is taken from the Florida Supreme Court Pattern Jury Instruction 406, which governs malicious prosecution claims under Florida law. Format Modifications have been made to mirror the federal instructions above and avoid confusion.

[37] These elements come from Levine v. Hunt, 932 So. 2d 1292, 1293 (Fla. 2d DCA 2006).

For the second element, Deputy Chapman is regarded as having instituted or continued a criminal proceeding against Harris if the proceeding resulted directly and in natural and continuous sequence from Deputy Chapman's actions, so that it reasonably can be said that, but for his actions, the proceeding would not have been instituted or continued.    Deputy Chapman is not regarded as having instituted or continued a criminal proceeding against another if in good faith he or she made a full and fair disclosure of what he knew to the proper authorities and left the decision to institute or continue the prosecution entirely to the judgment of the authorities.

For the fourth element, Deputy Chapman is regarded as acting maliciously if, in instituting or continuing the criminal proceedings against Harris, he did so for the primary purpose of injuring Harris, or recklessly and without regard for whether the proceeding is justified, or for any primary purpose except to bring Harris to justice. In determining whether Deputy Chapman acted maliciously, you may consider all the circumstances at the time of the conduct complained of, including any lack of probable cause.

For the fifth element, probable cause means that at the time of instituting or continuing a criminal proceeding against Harris, the facts and circumstances known to Deputy Chapman were sufficiently strong to support a reasonable belief that Harris had committed a criminal offense.

For the sixth element, Deputy Chapman's conduct caused Harris's injuries if Harris would not have been injured without Deputy Chapman's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Chapman's conduct.

If you find Harris has proven each element that he must prove, you must decide the issue of his damages.  If you find that Harris has not proven each of these elements, then you must find for Deputy Chapman.

## Count XI – Battery Florida Law[38]

Plaintiff Robert Harris claims that Deputy Kasey Wingo committed a battery against him during his arrest.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:[39]

First: That Deputy Wingo intentionally made harmful or offensive contact with Harris;

Second: That Deputy Wingo's use of force was excessive;

Third: That Deputy Wingo acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights or safety.[40]

Fourth: That Deputy Wingo's conduct caused Harris's injuries.

For the second element, Harris claims that Deputy Wingo used excessive force. A presumption of good faith attaches to an officer's use of

---

[38] The Florida Supreme Court has not created a pattern jury instruction for civil battery. However, as this Court has observed, a battery claim against a police officer is analyzed under the same standard as § 1983 excessive force. See Harris v. Rambosk, No. 2:18-CV-17-FTM-29MRM, 2019 WL 5722080, *36 n.14 (M.D. Fla. Nov. 5, 2019); see also Jean-Baptiste on behalf of Jean-Baptiste v. Jones, 424 F. Supp. 3d 1251, 1263 (S.D. Fla. 2019). Accordingly, the instructions below borrow heavily from the Eleventh Circuit's pattern instruction for excessive force. Other sources of Florida law are cited where appropriate.

[39] City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).

[40] Fla. Stat. § 768.28(9); Jones v. City of Orlando, 11-CV-1681-ORL-19KRS, 2012 WL 12904725, at *9 (M.D. Fla. Nov. 16, 2012); McGhee v. Volusia Cty., 679 So. 2d 729, 733 (Fla. 1996).

force in making an arrest, and an officer is liable for damages only where the force used is clearly excessive.  An officer has the right to use reasonable force to complete an arrest considering all of the circumstances.[41]

For the third element, a law enforcement officer acts in bath faith or with a malicious purpose if his conduct was committed with ill will, hatred, spite, or an evil intent.[42]  An officer acts with wanton or willful disregard if he intends to cause damage to persons or property, or he has a conscious and intentional indifference to the consequences and with the knowledge that damage is likely to be done.[43]

For the fourth element, Deputy Wingo's conduct caused Harris's injuries if Harris would not have been injured without Deputy Wingo's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Wingo's conduct.

If you find Harris has proven each element that he must prove, you must decide the issue of his damages. If you find that Harris has not proven each of these elements, then you must find for Deputy Wingo.

---

[41] <u>Turk v. Bergman</u>, No. 8:14-CV-1940-MSS-AEP, 2018 WL 8248902, at *2 (M.D. Fla. Dec. 12, 2018).

[42] <u>Peterson v. Pollack</u>, 290 So. 3d 102, 109 (Fla. 4th DCA 2020).

[43] <u>Peterson v. Pollack</u>, 290 So. 3d 102, 109 (Fla. 4th DCA 2020).

## Count XI – Battery Florida Law[44]

Plaintiff Robert Harris claims that Deputy Michael Chapman committed a battery against him during his arrest.

To succeed on this claim, Harris must prove each of the following elements by a preponderance of the evidence:[45]

First: That Deputy Chapman intentionally made harmful or offensive contact with Harris;

Second: That Deputy Chapman's use of force was excessive;

Third: That Deputy Chapman acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights or safety.[46]

Fourth: That Deputy Chapman's conduct caused Harris's injuries.

For the second element, Harris claims that Deputy Chapman used excessive force. A presumption of good faith attaches to an officer's use of

---

[44] The Florida Supreme Court has not created a pattern jury instruction for civil battery. However, as this Court has observed, a battery claim against a police officer is analyzed under the same standard as § 1983 excessive force. See Harris v. Rambosk, No. 2:18-CV-17-FTM-29MRM, 2019 WL 5722080, *36 n.14 (M.D. Fla. Nov. 5, 2019); see also Jean-Baptiste on behalf of Jean-Baptiste v. Jones, 424 F. Supp. 3d 1251, 1263 (S.D. Fla. 2019). Accordingly, the instructions below borrow heavily from the Eleventh Circuit's pattern instruction for excessive force. Other sources of Florida law are cited where appropriate.

[45] City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).

[46] Fla. Stat. § 768.28(9); Jones v. City of Orlando, 11-CV-1681-ORL-19KRS, 2012 WL 12904725, at *9 (M.D. Fla. Nov. 16, 2012); McGhee v. Volusia Cty., 679 So. 2d 729, 733 (Fla. 1996).

force in making an arrest, and an officer is liable for damages only where the force used is clearly excessive.  An officer has the right to use reasonable force to complete an arrest considering all of the circumstances.[47]

For the third element, a law enforcement officer acts in bath faith or with a malicious purpose if his conduct was committed with ill will, hatred, spite, or an evil intent.[48]  An officer acts with wanton or willful disregard if he intends to cause damage to persons or property, or he has a conscious and intentional indifference to the consequences and with the knowledge that damage is likely to be done.[49]

For the fourth element, Deputy Chapman's conduct caused Harris's injuries if Harris would not have been injured without Deputy Chapman's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Chapman's conduct.

If you find Harris has proven each element that he must prove, you must decide the issue of his damages. If you find that Harris has not proven each of these elements, then you must find for Deputy Chapman.

---

[47] Turk v. Bergman, No. 8:14-CV-1940-MSS-AEP, 2018 WL 8248902, at *2 (M.D. Fla. Dec. 12, 2018).

[48] Peterson v. Pollack, 290 So. 3d 102, 109 (Fla. 4th DCA 2020).

[49] Peterson v. Pollack, 290 So. 3d 102, 109 (Fla. 4th DCA 2020).

**Damages**[50]

If you find for Plaintiff Robert Harris on any of his claims, you must consider the issue of damages.

You should assess the monetary amount that a preponderance of the evidence justifies as full and reasonable compensation for all of Harris's damages—no more, no less. You must not impose or increase these compensatory damages to punish or penalize either Deputy Wingo or Deputy Chapman. And you must not base these compensatory damages on speculation or guesswork. But compensatory damages are not restricted to actual loss of money—they also cover the physical aspects of the injury. Harris does not have to introduce evidence of a monetary value for intangible things like physical pain. You must determine what amount will fairly compensate him for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

You should consider the following elements of damage, to the extent you find that Harris has proven them by a preponderance of the evidence, and no others:

(a) The reasonable value of medical care and supplies that Harris

---

[50] Unless otherwise indicated, the language below is taken from the Eleventh Circuit's Pattern Jury Instruction 5.13, which governs damages in the context of civil rights claims.

reasonably needed and actually obtained, and the present value of medical care and supplies that Harris is reasonably certain to need in the future;

(b) Harris's physical injuries, including ill health, physical pain and suffering, disability, disfigurement, and discomfort, including such physical harm that he is reasonably certain to experience in the future;

(c) Wages, salary, profits, and the reasonable value of working time that Harris lost because of his inability or diminished ability to work, and the present value of such compensation that Harris is reasonably certain to lose in the future because of his inability or diminished ability to work;

(d) Harris's mental and emotional distress, impairment of reputation, and personal humiliation, including such mental or emotional harm that he is reasonably certain to experience in the future; and

(e) The reasonable value of Harris's property that was lost or destroyed because of the Deputies' conduct.

You may award $1.00 in nominal damages and no compensatory damages if you find that: (a) Harris has submitted no credible evidence of injury; or (b) Harris's injuries have no monetary value or are not quantifiable with any reasonable certainty; or (c) the Deputies used both justifiable and unjustifiable force against Harris and it is entirely unclear whether Harris's injuries resulted from the use of justifiable or unjustifiable force.

Anyone who claims loss or damages as a result of an alleged wrongful

act by another has a duty under the law to "mitigate" those damages—to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage. So, if you find that the Deputies have proved by a preponderance of the evidence that Harris did not seek out or take advantage of a reasonable opportunity to reduce or minimize the loss or damage under all the circumstances, you should reduce the amount of Harris's damages by the amount that he could have reasonably received if he had taken advantage of such an opportunity.

/s/ Robert C. Shearman
ROBERT C. SHEARMAN, ESQ.
Florida Bar No. 614025
robert.shearman@henlaw.com
Henderson, Franklin, Starnes & Holt
P.O. Box 280
Fort Myers, Florida  33902-0280
Telephone:  239-344-1346
Facsimile:  239-344-1501
Attorneys for Defendant Wingo

/s/ Bruce R. Bogan
BRUCE R. BOGAN, ESQ.
Florida Bar No.:  599565
bbogan@hilyardlawfirm.com
MELISSA J. SYDOW, ESQ.
Florida Bar No.:  39102
msydow@hilyardlawfirm.com
Hilyard, Bogan & Palmer
P.O. Box 4973
Orlando, Florida  32802-4973
Telephone:  407-425-4251
Facsimile:  407-841-8431
Attorneys for Defendant Chapman