UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT DALE HARRIS,

      Plaintiff,

v.                        Case No:  2:18-cv-17-JES-MRM

KASEY    P.    WINGO,
individually,  MICHAEL  D.
CHAPMAN, individually,

      Defendants.

_____

**DRAFT**

**COURT'S INSTRUCTIONS TO THE JURY**

Members of the jury:

It is my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will hear the closing arguments of counsel, and will then go to the jury room and begin your discussions, sometimes called deliberations.  When you begin your deliberations, you will each receive a copy of these instructions. I am going to read the instructions to you now so that you will know the applicable legal principles when you hear the closing arguments of the attorneys.

1

## **Preliminary Instructions**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all my instructions as a whole. You must not single out or disregard any of the instructions on the law.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and is not binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

In this case, you have been permitted to take notes during the trial. Most of you – perhaps all of you – have taken advantage of that opportunity. You must use your notes only as a memory aid during deliberations. You must not give your notes priority over your independent recollection of the evidence. And you must not allow yourself to be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than your memories or impressions about the testimony.

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The

number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

When technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. But that does not mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

In this case it is the responsibility of Mr. Harris as Plaintiff to prove every essential part of his claim by a

"preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Mr. Harris's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Mr. Harris.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Mr. Harris's claim by a preponderance of the evidence, you should find for the Deputy as to that claim.

Defendants assert affirmative defenses in this case. Even if Mr. Harris proves his claims by a preponderance of the evidence, a Defendant can prevail in this case if he proves an affirmative defense by a preponderance of the evidence. When more than one affirmative defense is involved, you should consider each one separately. I caution you that Defendants do not have to disprove Mr. Harris's claims, but if Defendants raise an affirmative

defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

## <u>Introduction to Claims By Mr. Harris</u>

Mr. Harris has brought claims against Deputy Wingo and Deputy Chapman individually.  While the claims against each are similar, you must consider each claim against each deputy separately.  The legal principles which apply to the claims, however, are the same, and therefore I will be discussing the law governing similar claims at the same time.

Mr. Harris brings claims arising from the events which occurred outside the storage facility on April 4, 2014.  Mr. Harris does not assert a claim of misconduct when the deputies first approached him and began a discussion with him.  Mr. Harris does assert, however, that as this initially lawful interaction continued, Deputy Wingo and Deputy Chapman engaged in various acts of misconduct which violated his rights.  Mr. Harris alleges both federal law claims and state law claims, which I will now explain.

## <u>Federal Claims by Mr. Harris</u>

### A. Federal False Arrest Claims

In Count II of the Amended Complaint, Mr. Harris brings a federal claim against Deputy Wingo for false arrest.  In Count V,

Mr. Harris brings a federal claim against Deputy Chapman for false arrest. More specifically, Mr. Harris alleges that Deputy Wingo and Deputy Chapman, while acting under color of law, intentionally committed acts that violated his constitutional right under the Fourth Amendment to the United States Constitution not to be arrested without probable cause.

The Fourth Amendment to the United States Constitution provides that every person has the right not to be arrested unless the officer has probable cause to do so. To succeed on this claim, Mr. Harris must prove each of the following facts by a preponderance of the evidence:

First: Deputy Wingo and Deputy Chapman intentionally committed acts that violated Mr. Harris's constitutional right not to be arrested unless there is probable cause to do so;

Second: Deputy Wingo's and Deputy Chapman's conduct caused Mr. Harris injury; and

Third: Deputy Wingo and Deputy Chapman acted under color of law.

For the first element, Mr. Harris claims that he was arrested without probable cause. A deputy may arrest a person without a warrant whenever the facts and circumstances within his knowledge, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed, is

8

committing, or is about to commit a criminal offense.   Under Florida law, it is a criminal offense for any person to resist or fail or refuse to comply with a lawful command or direction from a police officer who is engaged in the lawful performance of a legal duty.

For the second element, Deputy Wingo's and Deputy Chapman's conduct caused Mr. Harris injury if Mr. Harris would not have been injured without the Deputies' conduct and the injury was a reasonably foreseeable consequence of the Deputies' conduct.

For the third element, you must decide whether the Deputies acted under color of law.  The parties agree that both Deputy Wingo and Deputy Chapman were acting under color of law, so you should accept that as a proven fact.

If you find Mr. Harris has proven each fact that he must prove, you must decide the issue of his damages.  I will give you instructions relating to damages in a few moments.   If you find that Mr. Harris has not proven each of these facts, then you must find for Deputy Wingo and Deputy Chapman.

**B.  Federal Excessive Force Claims**

Also in Count II of the Amended Complaint, Mr. Harris brings a federal claim against Deputy Wingo for excessive force. Similarly, in Count V, Mr. Harris brings a federal claim against Deputy Chapman for excessive force.  Mr. Harris alleges that Deputy Wingo and Deputy Chapman, while acting under color of law, intentionally committed acts that violated his constitutional right to be free from the use of excessive or unreasonable force during an arrest.

To succeed on this claim, Mr. Harris must prove each of the following facts by a preponderance of the evidence:

First: Deputy Wingo and Deputy Chapman intentionally committed acts that violated Mr. Harris's constitutional right not to be subjected to excessive or unreasonable force during an arrest;

Second: Deputy Wingo's and Deputy Harris's conduct caused Mr. Harris injury; and

Third: Deputy Wingo and Deputy Chapman acted under color of law.

For the first element, Mr. Harris claims that Deputy Wingo and Deputy Chapman used excessive force when arresting him. The Fourth Amendment's right to be free of unreasonable searches and seizures includes the right to be free from the use of excessive

force in the course of an arrest, even if the arrest is otherwise valid.  When making a lawful arrest, an officer has the right to use reasonably necessary force to complete the arrest.  If the arrest is unlawful, an officer has no right to use any amount of force.  Whether an officer has used excessive force depends on the facts and circumstances of each particular case.  The issue is whether the totality of the circumstances justified the amount of force used.  The reasonableness of the use of force is evaluated under an objective inquiry that pays careful attention to the facts and circumstances of each case.  The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  You must assess whether the officer's actions were objectively reasonable based on the information the officer had when the conduct occurred.  The circumstances to consider include the relationship between the need for the use of force and the amount of force used; the extent of the Mr. Harris's injury; any effort made by the officer to temper or limit the amount of force; the severity of the crime at issue; the threat reasonably perceived by the officer; and whether the Mr. Harris was actively resisting. You must decide whether the force Deputy Wingo and Deputy Chapman used in making the arrest was excessive or unreasonable based on the degree of force a reasonable and prudent law enforcement officer would have applied in making the arrest under the same

11

circumstances. The Deputies' underlying intent or motivation is not relevant.

For the second element, Deputy Wingo's and Deputy Chapman's conduct caused Mr. Harris injury if Mr. Harris would not have been injured without the Deputies' conduct and the injuries were a reasonably foreseeable consequence of the Deputies' conduct.

For the third element, you must decide whether the Deputies acted under color of law.  The parties agree that both Deputy Wingo and Deputy Chapman were acting under color of law, so you should accept that as a proven fact.

If you find Mr. Harris has proven each element that he must prove, you must decide the issue of his damages, which I will discuss in a moment. If you find that Mr. Harris has not proven each of these elements, then you must find for Deputy Wingo and Deputy Chapman.

**C. Federal Malicious Prosecution Claims**

In Count III of the Amended Complaint, Mr. Harris brings a federal claim against Deputy Wingo for malicious prosecution.  In Count VI, Mr. Harris brings a federal claim against Deputy Chapman for malicious prosecution. Mr. Harris alleges that Deputy Wingo

and Deputy Chapman, while acting under color of law, maliciously caused criminal proceedings to be commenced or continued against Mr. Harris without probable cause, and because of those proceedings Mr. Harris was unlawfully seized in violation of his rights under the Fourth Amendment to the United States Constitution.

To succeed on this claim, Mr. Harris must prove each of the following facts by a preponderance of the evidence:

First: Deputy Wingo and Deputy Chapman caused a judicial criminal proceeding to be commenced or continued against Mr. Harris;

Second: Deputy Wingo and Deputy Chapman acted with malice and without probable cause in commencing or continuing the judicial criminal proceeding;

Third: The judicial criminal proceeding terminated in Mr. Harris's favor;

Fourth: Deputy Wingo's and Deputy Chapman's conduct caused Mr. Harris injury;

Fifth: Mr. Harris was unlawfully seized as a result of the judicial criminal proceeding; and

Sixth: Deputy Wingo and Deputy Chapman acted under color of law.

For the first element, a judicial criminal proceeding does not begin until Mr. Harris is arraigned before a judge or the State

Attorney's Office files a charging document, or a formal arrest warrant is issued.

For the second element, you must decide whether Deputy Wingo's and Deputy Chapman's actions causing the judicial criminal proceeding to be commenced or continued were taken with malice and without probable cause. To prove malice, Mr. Harris must show that the Deputies' actions were intentional and without justification or excuse. Probable cause exists whenever the facts and circumstances within Deputy Wingo's and Deputy Chapman's knowledge, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed or is committing a criminal offense.

For the third element, the parties agree that the state judicial criminal proceeding terminated in Mr. Harris's favor, so you should accept that as a proven fact.

For the fourth element, Deputy Wingo's and Deputy Chapman's conduct caused Mr. Harris injury if Harris would not have been injured without the Deputies' conduct and the injuries were a reasonably foreseeable consequence of the Deputies' conduct.

For the fifth element, you must decide whether Mr. Harris was unlawfully seized as a result of the criminal proceeding. A seizure under the Fourth Amendment occurs when there is an undue restraint placed on an individual's personal liberty. This seizure must have occurred after the beginning of Mr. Harris's judicial criminal proceeding.

For the sixth element, you must decide whether Deputy Wingo and Deputy Chapman acted under color of law. The parties agreed that both Deputy Wingo and Deputy Chapman were acting under color of law, so you should accept that as a proven fact.

If you find Mr. Harris has proven each element that he must prove, you must decide the issue of his damages. If you find that Mr. Harris has not proven each of these elements, then you must find for Deputy Wingo and Deputy Chapman.

### D.  First Amendment Retaliation Claim

In Count XIII of the Amended Complaint, Mr. Harris brings a federal claim against Deputy Wingo and Deputy Chapman for First Amendment retaliation. Mr. Harris alleges that Deputy Wingo and Deputy Chapman, while acting under color of law, arrested him in retaliation for filing a prior complaint with the Collier County Sheriff's Office and for questioning why he was stopped outside

the storage facility, in violation of the First Amendment to the United States Constitution.

As a general matter, the First Amendment prohibits a law enforcement officer from arresting a person in retaliation for engaging in protected speech or conduct.  To succeed on this claim, Mr. Harris must prove each of the following facts by a preponderance of the evidence:

First: Mr. Harris's speech or conduct was constitutionally protected by the First Amendment;

Second: Mr. Harris's protected speech or conduct was the cause of Deputy Wingo's and Deputy Chapman's decision to arrest Mr. Harris;

Third: Deputy Wingo's and Deputy Chapman's arrest of Mr. Harris would likely deter a person of ordinary firmness from engaging in similar protected speech or conduct;

Fourth: Deputy Wingo and Deputy Chapman acted without probable cause to arrest Mr. Harris; and

Fifth: Deputy Wingo and Deputy Chapman acted under color of law.

For the first element, Mr. Harris asserts that his protected First Amendment conduct was his previous filing of a complaint with the Collier County Sheriff's Office and his protected First Amendment speech was his conversation with Deputy Wingo and Deputy

Chapman which questioned the basis of his being stopped.  A person has a First Amendment right to file a complaint about a deputy with a sheriff's office.  Additionally, the parties agree that the First Amendment protects the statements by Mr. Harris outside the storage facility.

For the second element, Mr. Harris must establish that his arrest was caused by his protected First Amendment speech or conduct.  In other words, Mr. Harris must show that Deputy Wingo and Deputy Chapman would not have arrested Mr. Harris but for his previous filing of the complaint with the sheriff's office or his questioning of the basis for his stop outside the storage facility.

For the third element, Mr. Harris must show that the Deputies' conduct in making an arrest would have likely deterred a person of ordinary firmness from the exercise of First Amendment rights.  This test is an objective one, not subjective.  Therefore, the question is not whether Mr. Harris himself would be deterred, although how Mr. Harris acted might be evidence of what a reasonable person would have done.

For the fourth element, Mr. Harris must show that the Deputies did not have probable cause to arrest him.  As I stated before, probable cause exists whenever the facts and circumstances within

Deputy Wingo's and Deputy Chapman's knowledge, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed or is committing a criminal offense.

For the fifth element, you must decide whether the Deputies acted under color of law.  The parties agreed that both Deputy Wingo and Deputy Chapman were acting under color of law, so you should accept that as a proven fact.

If you find Mr. Harris has proven each of the elements he must prove, you must then decide the issue of Mr. Harris's damages, which I will discuss in a moment.  However, if you find that Mr. Harris did not prove each of the facts he is required to prove, or if you find that Deputy Wingo and Mr. Chapman proved their contention, then you must find for Deputy Wingo and Deputy Chapman.

## State Claims by Mr. Harris

Mr. Harris has also brought state law claims against Deputy Wingo and Deputy Chapman. I will explain those state law claims now.

18

## A. State Malicious Prosecution Claims

In Count VI of the Amended Complaint, Mr. Harris brings a state-law claim of malicious prosecution against Deputy Wingo. In Count VII, Mr. Harris brings a state-law claim of malicious prosecution against Deputy Chapman.

Mr. Harris alleges that Deputy Wingo and Deputy Chapman maliciously and without probable cause filed and continued judicial criminal proceedings against him which later terminated in his favor and which caused him harm.

To succeed on this claim, Mr. Harris must prove each of the following facts by a preponderance of the evidence:

First: A judicial criminal proceeding was commenced or continued against Mr. Harris;

Second: Deputy Wingo and Deputy Chapman were the legal cause of the judicial criminal proceeding;

Third: The judicial criminal proceeding terminated in Mr. Harris's favor.

Fourth: Deputy Wingo and Deputy Chapman acted with malice;

Fifth: Deputy Wingo and Deputy Chapman acted without probable cause for the judicial criminal proceeding;

Sixth: Mr. Harris suffered damage as a result of the judicial criminal proceeding.

For the first element, a judicial criminal proceeding does not begin until Mr. Harris is arraigned before a judge or the State Attorney's Office files a charging document, or a formal arrest warrant issued.

For the second element, Deputy Wingo and Deputy Chapman are regarded as having instituted or continued a criminal proceeding against Mr. Harris if the proceeding resulted directly and in natural and continuous sequence from Deputies' actions, so that it reasonably can be said that, but for their actions, the proceeding would not have been instituted or continued. The Deputies are not regarded as having instituted or continued a criminal proceeding against another if in good faith they made a full and fair disclosure of what they knew to the proper authorities and left the decision to institute or continue the prosecution entirely to the judgment of the authorities.

As to the third factor, the parties have agreed that the criminal proceeding terminated in Mr. Harris's favor, so you should accept that as a proven fact.

For the fourth element, the Deputies are regarded as acting maliciously if, in instituting or continuing the criminal proceedings against Mr. Harris, they did so for the primary purpose

of injuring Mr. Harris, or recklessly and without regard for whether the proceeding is justified, or for any primary purpose except to bring Mr. Harris to justice. In determining whether Deputy Chapman and Deputy Wingo acted maliciously, you may consider all the circumstances at the time of the conduct complained of, including the presence or absence of probable cause.

For the fifth element, probable cause means that at the time of instituting or continuing a criminal proceeding against Mr. Harris, the facts and circumstances known to the Deputies were sufficiently strong to support a reasonable belief that Mr. Harris had committed a criminal offense.

For the sixth element, Deputies Wingo and Chapman's conduct caused Mr. Harris injury if Harris would not have been injured without the Deputies' conduct, and the injuries were a reasonably foreseeable consequence of the Deputies' conduct.

If you find Mr. Harris has proven each element that he must prove, you must decide the issue of his damages. If you find that Mr. Harris has not proven each of these elements, then you must find for Deputy Wingo and Deputy Chapman.

**B. Battery Claim**

In Count XI of the Amended Complaint, Mr. Harris brings a claim for battery under Florida law against Deputy Wingo and Deputy Chapman.  Mr. Harris alleges that Deputy Wingo and Deputy Chapman committed a battery against him during his arrest.  To succeed on this claim, Mr. Harris must prove each of the following elements by a preponderance of the evidence:

First: Deputy Wingo and Deputy Chapman intentionally made harmful or offensive contact with Mr. Harris;

Second: Deputy Wingo's and Deputy Chapman's use of force was excessive;

Third: Deputy Wingo and Deputy Chapman acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights or safety.

Fourth: Deputy Wingo's and Deputy Chapman's conduct caused Mr. Harris injury.


For the second element, Mr. Harris claims that Deputy Wingo and Deputy Chapman used excessive force.  Under Florida law, a presumption of good faith attaches to an officer's use of force in making an arrest, and an officer is liable for damages only where the force used is clearly excessive. An officer has the right to use reasonable force to complete an arrest considering all of the circumstances.

For the third element, a law enforcement officer acts in bad faith or with a malicious purpose if his conduct was committed with ill will, hatred, spite, or an evil intent. An officer acts with wanton or willful disregard if he intends to cause damage to persons or property, or he has a conscious and intentional indifference to the consequences and with the knowledge that damage is likely to be done.

For the fourth element, Deputy Wingo's and Deputy Chapman's conduct caused Mr. Harris injury if Harris would not have been injured without Deputy Wingo's and Deputy Chapman's conduct, and the injuries were a reasonably foreseeable consequence of Deputy Wingo's and Deputy Chapman's conduct.

If you find Mr. Harris has proven each element that he must prove, you must decide the issue of his damages. If you find that Mr. Harris has not proven each of these elements, then you must find for Deputy Wingo and Deputy Chapman.

## Damages

If you find for Mr. Harris on any of his claims, you must consider the issue of damages.

You should assess the monetary amount that a preponderance of the evidence justifies as full and reasonable compensation for all of Mr. Harris's damages—no more, no less. You must not impose or increase these compensatory damages to punish or penalize either Deputy Wingo or Deputy Chapman. And you must not base these compensatory damages on speculation or guesswork.

Compensatory damages are not restricted to actual loss of money—they also cover the physical aspects of the injury. Mr. Harris does not have to introduce evidence of a monetary value for intangible things like physical pain. You must determine what amount will fairly compensate him for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

You should consider the following elements of damage, to the extent you find that Mr. Harris has proven them by a preponderance of the evidence, and no others:

(a) The reasonable value of medical care and supplies that Mr. Harris reasonably needed and actually obtained, and the present value of medical care and supplies that Mr. Harris is reasonably certain to need in the future;

(b) Mr. Harris's physical injuries, including ill health, physical pain and suffering, disability, disfigurement, and discomfort, including such physical

harm that he is reasonably certain to experience in the future;

(c) Wages, salary, profits, and the reasonable value of working time that Mr. Harris lost because of his inability or diminished ability to work, and the present value of such compensation that Mr. Harris is reasonably certain to lose in the future because of his inability or diminished ability to work; and

(d) Mr. Harris's mental and emotional distress, impairment of reputation, and personal humiliation, including such mental or emotional harm that he is reasonably certain to experience in the future; and

(e) The reasonable value of Mr. Harris's property that was lost or destroyed because of the Deputies' conduct.

You may award $1.00 in nominal damages and no compensatory damages if you find that:

(a) Mr. Harris has submitted no credible evidence of injury; or

(b) Mr. Harris's injuries have no monetary value or are not quantifiable with any reasonable certainty; or

(c) Deputies Wingo and Chapman used both justifiable and unjustifiable force against Mr. Harris and it is

entirely unclear whether Mr. Harris's injuries resulted from the use of justifiable or unjustifiable force.

Anyone who claims loss or damages as a result of an alleged wrongful act by another has a duty under the law to "mitigate" those damages—to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage. So, if you find that Deputy Wingo and Deputy Chapman have proved by a preponderance of the evidence that Mr. Harris did not seek out or take advantage of a reasonable opportunity to reduce or minimize the loss or damage under all the circumstances, you should reduce the amount of Mr. Harris's damages by the amount that he could have reasonably received if he had taken advantage of such an opportunity.

If you find for Mr. Harris and find that either Deputy Wingo or Deputy Chapman acted with malice or reckless indifference to Mr. Harris's federally protected rights, the law allows you, in your discretion, to award Mr. Harris punitive (exemplary) damages as a punishment for Deputy Wingo or Deputy Chapman and as a deterrent to others.

Mr. Harris must prove by a preponderance of the evidence that he is entitled to punitive damages.

Deputy Wingo or Deputy Chapman acts with malice if their conduct is motivated by evil intent or motive. Deputy Wingo or Deputy Chapman acts with reckless indifference to the protected federal rights of Mr. Harris when Deputy Wingo or Deputy Chapman engages in conduct with a callous disregard for whether the conduct violates Mr. Harris's protected federal rights.

If you find that punitive damages should be assessed, you may consider the evidence regarding Deputy Wingo's or Deputy Chapman's financial resources in fixing the amount of punitive damages to be awarded. You may also assess punitive damages against either Deputy Wingo or Deputy Chapman, or both deputies.

Of course, the fact that I have given you instructions concerning the issue of Mr. Harris's damages should not be interpreted in any way as an indication that I believe that the Mr. Harris should, or should not, prevail in this case.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device with access to the internet, or any social media such as Facebook (Meta) or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond

with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have.  In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.  Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So, you must discuss the case with one another and try to reach an agreement.

While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you have all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you will return it to the courtroom. If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I will respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or

the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

Counsel will now be making their final arguments to you. Counsel for Mr. Harris will have the opening argument, counsel for Deputy Wingo and Deputy Chapmen will then have the opportunity to present arguments, and then counsel for Mr. Harris will have the opportunity to present a rebuttal argument. This is proper under our rules because Mr. Harris has the burden of proving his claims by a preponderance of the evidence.

In making their arguments, counsel will be commenting on the testimony that you have heard and the evidence that has been presented. They, as you, will be recalling the testimony and evidence in the case. They will not intentionally try to mislead you. However, if their recollection of the testimony or the evidence differs from your recollection, you must follow your own recollection.

These final arguments by counsel are not to be construed by you as evidence or as the instruction on the law. Nevertheless, these arguments are intended to help you to understand the contentions of each side and you should give the attorneys your close attention.